FIRST NATIONAL BANK OF WYMORE v. ABRAHAM L. MILLER.

FILED JUNE 30, 1893. No. 4871.

1. **Negotiable Instruments**: CHECKS: PRESENTMENT: REASONABLE TIME: RELEASE OF INDORSER. On Saturday, the 31st day of May, 1890, about the close of banking hours, one M. indorsed in blank and deposited to his credit in a bank in Wymore, Nebraska, certain checks drawn to his order by one B. on a bank in Cortland, Nebraska. Wymore and Cortland are twenty-seven miles distant from one another, but connected by telegraph, telephone, and railroad lines, and a mail left Wymore at 6 P. M. daily, arriving at Cortland at 9 P. M. the same day. The Wymore bank made no inquiry of the Cortland bank as to whether the checks were good, nor did it at any time advise the Cortland bank that it held the checks, but on the day of their receipt, mailed said checks to a bank in St. Joseph, Missouri, which bank sent them by mail to a bank in Omaha, Nebraska, and this latter bank sent them by mail to the bank in Cortland, at which they arrived on June 5, and were then protested for non-payment. *Held*, That the Wymore bank did not present the checks for payment to the Cortland bank in a reasonable time, and that the indorser, Miller, was thereby discharged.

2. ———: ———: ———: DILIGENCE. An ordinary check is not designed for circulation, but for immediate presentment, and to charge an indorser must be presented with all due dispatch and diligence consistent with the transaction of other commercial business.

3. ———: ———: ———: ———. Greater diligence is required in presenting ordinary checks for payment than in presenting bills of exchange. Whether an ordinary check has been presented for payment by the indorsee thereof in such a reasonable time as to hold the indorser must be determined from the facts and circumstances of each particular case.

4. **Banks and Banking:** CUSTOM AND USAGE: CHE:KS. No custom or usage among bankers as to the manner of presenting ordinary checks for payment will relieve them from the legal duty of presenting such checks for payment within a reasonable time.

5. **Checks:** INDORSERS: PRESENTMENT: DAMAGES: EVIDENCE. In a suit by an indorsee against the indorser of an ordinary check, where the defense is that the check was not presented for payment within a reasonable time, inquiry as to whether the indorser was damaged by reason of the failure to present the check for payment is immaterial.

ERROR from the district court of Gage county. Tried below before APPELGET, J.

*A. D. McCandless* and *Marquett, Deweese & Hall,* for plaintiff in error.

*Griggs, Rinaker & Bibb* and *T. F. Burke,* contra.

RAGAN, C.

On Saturday, the 31st day of May, 1890, about 4 o'clock in the afternoon, Abraham L. Miller indorsed in blank and deposited to his credit in the First National Bank of Wymore two checks, drawn by A. W. Beahm to Miller's order, on the State Bank of Cortland, Nebraska. These checks aggregated $3,429.25.

The town of Cortland is twenty-seven miles distant from Wymore, the two being connected by telephone, telegraph, and railroad lines, and two daily mails. The mails for Cortland closed at Wymore, at that time, at 6 and 8 o'clock respectively in the afternoon of each day. The first mail would reach Cortland at 9 o'clock P. M. of the same day, and the second at 10 o'clock the next day.

The plaintiff in error made no inquiry of the Cortland bank as to whether the Beahm checks were good, nor did it notify the Cortland bank that it held such checks. On the same day that the checks were received by it, the

plaintiff in error sent them by mail to a bank in St. Joseph, Missouri, for collection. That bank forwarded them by mail to the Omaha National Bank, at Omaha, Nebraska, for collection, and the latter sent them by mail to the State Bank of Cortland, on which they were drawn. This bank received them on Thursday, the 5th day of June. Beahm being insolvent, they were protested for non-payment. At the close of business on Saturday, the 31st of May, Beahm had to his credit in the State Bank of Cortland, $3,533.76. On the morning of Monday, the 2d day of June, at the commencement of business, Beahm had to his credit in the State Bank of Cortland, the sum of $3,533.76, and during the day he deposited $3,200 more to his credit in the same bank. Against this sum the cashier of the Cortland bank had agreed to accept checks of Beahm's amounting to $3,800. On the morning of Tuesday, June 3, Beahm had to his credit in the Cortland bank, $2,132.65. On the morning of Wednesday, June 4, he had to his credit a balance in the Cortland bank of $1,621.35, and during the day deposited $500 more. During this day, June 4, he drew against his deposits in the Cortland bank, so that on Thursday morning, June 5, he had left to his credit in the Cortland bank the sum of $310.15. After Miller had deposited in plaintiff in error the two Beahm checks, he drew against them checks amounting to $2,-472.29, which plaintiff in error paid, leaving to his credit a balance of $956.96. The bank having refused to pay him this, he brought this suit to recover it.

The plaintiff in error filed an answer and counter-claim, in and by which it alleges the deposit by Miller in its bank of the Beahm checks; that it forwarded said checks in a reasonable time to the State Bank of Cortland, on which they were drawn, but that the checks were worthless and payment was refused for the reason that Beahm had no funds in the Cortland bank with which to pay the same, and that the checks were duly protested; and that on the

day the checks were deposited it had paid checks of Miller's amounting to $2,482.28, and that subsequently it had collected from the said Beahm $800, and put the same to the credit of Miller, leaving Miller owing the plaintiff in error $1,687.84, for which sum, with interest and protest fees, it prayed judgment against Miller.

The case was tried to the court, a jury being waived. The court found for the defendant in error, Miller, and rendered judgment against the plaintiff in error for the sum of $956.96, the difference between the Beahm checks and the total of the checks which Miller had drawn on the bank after their deposits, and which the bank had paid.

The bank brings the case here for review, the error alleged being that the findings and judgment of the court below were contrary to the law and evidence.

After a careful and patient examination of this record, we have no doubt that the Beahm checks were received by the plaintiff in error as cash, and that they were not received by the plaintiff in error for collection for Miller. This proposition is abundantly supported by the facts and the evidence throughout the entire case. These checks were payable to Miller's order, and by him indorsed and delivered to the plaintiff in error, which gave Miller credit for the amount of them and allowed him to check against them. After these checks were deposited in plaintiff in error by Miller, the relation subsisting between the bank and Miller was, first, that of depositor and depositee, and second, that of indorser and indorsee.

The plaintiff in error contends, conceding the checks were not presented for payment within a reasonable time, that Miller was not prejudiced by the delay. We do not assent to this as a conclusion of fact. The evidence is: Had plaintiff in error, on the date it received the checks, advised the Cortland bank of the fact, that bank would have paid the checks in full. At the opening of business on Monday, June 2, Beahm had on deposit in the Cort-

land bank $3,533.76, and during the day he deposited $3,200 more. Against this there was a check of $3,800 that the bank had agreed to accept, which would leave on deposit at the Cortland bank at the close of business on Monday, June 2, to Beahm's credit, $2,933.76. Had the checks reached Cortland on Tuesday, June 3, there were $1,186.35 of Beahm's money on deposit there that date. Had they reached the Cortland bank on Wednesday, June 4, there were in the Cortland bank, to Beahm's credit, $2,125.35. We do not see from this evidence how plaintiff in error can claim that the delay in presenting these checks worked no injury to Miller. But in a suit like this, between the indorsee and indorser of an ordinary check, is it a material inquiry whether the delay of the indorsee in presenting the check damaged the indorser?

Tiedeman, Commercial Paper, sec. 442, after stating that the drawer of a check would not be discharged by the failure to present it for payment within a reasonable time, unless the drawer was prejudiced thereby, continues: "The rule is different with regard to indorsers. They are discharged whether they have suffered any damage or not from the failure to make due presentment and give the notice of dishonor within a reasonable time."

In *Northwestern Coal Co. v. Bowman & Co.*, 69 Ia., 150, that court say, after deciding that the plaintiff had held the check in question an unreasonable time before presenting it, and that it could not recover against indorsers: "The fact that the drawer had no funds in the hands of the drawee when the check was drawn makes no difference."

In *Gough v. Staats*, 13 Wend., 549, the supreme court of New York say: "If there has not been due diligence in presenting the check for payment, the indorser is discharged, although he has not been prejudiced by the delay."

We think these cases state the rule correctly, and that the question as to whether the indorser was damaged by the delay in presenting the Beahm checks for payment was

wholly immaterial.. The question then is, whether plaintiff in error was guilty of such negligence or laches in the presentment of these checks for payment to the bank on which they were drawn as to release the indorser Miller? The authorities all say that in order to hold an indorser of a check it must be presented by the indorsee in a reasonable time, and as to what is a reasonable time, depends upon the facts and circumstances of each particular case.

Now, it appears from the evidence in this record that the plaintiff in error was guilty of negligence at the time it received the Beahm checks·in not inquiring of the Cortland bank as to whether they would be paid on presentation. It further appears that Cortland is only twenty-seven miles distant from Wymore, plaintiff in error's place of business; that the checks could have been mailed by the plaintiff in error to the Cortland bank the same day they were received, and they would have reached the Cortland bank, at the furthest, on Monday at 10 o'clock in the forenoon. The plaintiff in error could have mailed the checks on Monday and they would have reached the Cortland bank on Tuesday at 10 o'clock A. M. Instead of this the plaintiff in error chose to mail these checks to St. Joseph, Missouri, and they go around by way of Omaha and then back to Cortland. It is also in evidence in this record, from the mouths of experienced bankers, that due diligence in the presentment of these Beahm checks to the Cortland bank required that the plaintiff in error should send them by the first mail to the Cortland bank, and the evidence does not establish the contention of the plaintiff in error that these checks were presented for collection to the Cortland bank under any custom of bankers. And if it did, we do not think that bankers, by any custom, can evade their legal duties. We think, therefore,. that the plaintiff in error did not use such diligence in the presentment of these Beahm checks for payment as to hold the indorser, Miller, thereon.

In *Smith v. Janes*, 20 Wend., 192, the supreme court of New York say: "The holder of a check can recover against the indorser only when he has used due diligence in presenting or giving notice of demand and non-payment. * * * Where the parties all reside in the same place the check should be presented on the day it is received, or on the following day; and when payable at a different place from that in which it is negotiated it should be forwarded by the mail on the same or the next succeeding day for presentment." (See also *Holmes v. Roe*, 62 Mich., 199.)

In *Mohawk Bank v. Broderick*, 10 Wend., 304, the supreme court of New York say: "A check on a bank for the payment of money, to charge an indorser, must be presented with all dispatch and diligence consistent with the transaction of other commercial concerns, and it was accordingly held, where a check was received in Schenectady on the 14th of January, drawn on a bank in Albany, a distance of sixteen miles from the former place, and between which places there is a daily mail, and not presented until the 6th of February, that laches was imputable to the holder, and that the indorser was discharged. * * Although it is said that checks are like inland bills of exchange and are to be governed by the same principles, greater diligence is required in presenting them than in presenting bills of exchange." This case was affirmed by the court for the correction of errors in 13 Wend. [N. Y.], 133. See to the same effect *Northwestern Coal Co. v. Bowman*, 69 Ia., 150.

We do not mean to lay down any rule by which the indorsee of a check must present the same for payment in any given time in order to hold the indorser. What we do decide, however, is, in this case, that the Beahm checks were not presented by the plaintiff in error within a reasonable time. In this case, Tuesday, June 3, would have been a reasonable time within which to present these checks.

It must be borne in mind that ordinary checks are not designed for circulation, but for immediate presentment. (Tiedeman, Commercial Paper, sec. 443, and cases there cited.)

The judgment of the district court is therefore in all things

AFFIRMED.

THE other commissioners concur.