THE CITIZENS NATIONAL BANK OF LAWRENCEBURG,
INDIANA, v. THE THIRD NATIONAL BANK
OF GREENSBURG, INDIANA.

[No. 2,340. Filed January 12, 1898.]

BANKS AND BANKING.—*Drafts.—Collections.*—A *bona fide* indorsee of
a bank draft is not bound to inquire whether the drawer had the
right to draw the draft, or whether he expected it to be paid upon
presentation, and such failure will not excuse a bank undertaking
the collection of such draft from presenting same for collection.
*pp. 74, 75.*

SAME.—*Sight Draft. —Presentation.—Collection.*—A bank receiving
a sight draft for collection should present same not later than the
day following the receipt thereof, where the drawee is in business
and has an office and representative in the same town where the
bank receiving the draft for collection is located. *p. 75.*

SAME.—*Drafts.—Solvency of Drawer.—Complaint.*—An allegation in
a complaint that the drawer of a draft remained in reputable credit
and continued to do business until a certain time warrants the con-
clusion that during such time he was solvent and able to pay the
draft. *p. 76.*

SAME.—*Drafts.—Action for Damages for Failure of Bank to Collect
Draft.—Answer.*—An answer to a complaint in an action against
a bank for damages caused by its negligence in failing to present a
draft for collection sent it by an indorsee, to the effect that the
drawer had no right to draw the draft and that the indorsee bank
at the time it took the draft knew such fact, must negative the
fact that the drawer intended to and did afterwards place funds in
the bank to meet the draft at maturity, and the indorsee was not
bound to assume that the drawer would not arrange for the accept-
ance of the draft by the drawee. *pp. 76, 77.*

SAME.—*Drafts.—Collection.—Notice of Dishonor.*—The fact that the
indorsee of a bank draft knew that the drawer had no funds in the
bank on which the draft was drawn, and had no reasonable grounds
for belief that the draft would be accepted, will not deprive such
indorsee of his right to a notice of its dishonor from the bank to
which such draft was sent for collection where no fraud upon the
part of the indorsee is shown. *p. 77.*

SAME.—*Drafts.—Transfer.—Consideration.*—The payment of an ante-
cedent debt is a sufficient consideration to make the indorsee of a
bank draft a *bona fide* purchaser. *pp. 77, 78.*

SAME.—*Drafts.—Collection.—Negligence.—Customs and Usages.*— It
is no defense to an action against a bank for damages arising from

its failure to present a draft for collection and its consequent failure to notify the sender of the acceptance or nonacceptance thereof, that a custom prevailed between plaintiff and defendant by which defendant held all paper sent it by plaintiff against drawee without notice of nonacceptance.   *pp. 78, 79.*

CUSTOMS AND USAGES.—*Banks and Banking.*—Usage can only regulate the manner of the performance of required acts, it cannot excuse nonperformance.   *p. 79.*

SAME.—*Negligence.—Banks and Banking.*—A party will not be permitted by negligence to make a custom to exempt him from liability on account of such negligence.   *p. 79.*

BANKS AND BANKING.—*Drafts.—Collections.—Agency.—Customs and Usages.—Answer.*—An answer to a complaint for damages against a bank for negligence in failing to collect a draft sent it for collection by plaintiff bank, alleging that defendant followed a custom established by it with reference to drafts sent it by plaintiff against such drawee is insufficient where there is no averment that plaintiff constituted defendant its continuing agent.   *p. 79.*

SAME.— *Pleading. — Agreement Waiving Rules of Law Merchant.* —Where a complaint avers that a bank received a draft for collection, and undertook as required by the law merchant and the custom of banks to present same promptly to the drawee for acceptance and give notice of the nonacceptance thereof, an agreement dispensing with the requirements of the law merchant is provable under the general denial.   *pp. 79, 80.*

SAME.—*Drafts.—Collections.—Customs ʳand Usages.*—An averment in an answer to a complaint for damages against a bank for negligence in failing to collect a draft, that by agreement defendant was to hold same a reasonable time without notice of nonacceptance or nonpayment, will be taken to mean the time allowed by the law merchant and the custom of banks.   *pp. 80, 81.*

SAME.—*Drafts.—Collection.—Presentment.—Negligence.—Liability of Collecting Agent.*—Where a drawer who is and remains solvent draws a draft without right under such circumstances that a right of recourse upon him is preserved to his indorsee without presentment, demand, or notice, a collecting agent failing to give prompt notice of the nonacceptance or nonpayment of the draft sent him for collection would only be liable for nominal damages; but where the drawer has become insolvent since the time at which the indorsee should have received notice of the nonacceptance of the draft, in accordance with the rules of the law merchant, the collecting agent will be held liable for the loss caused by such negligence.   *pp. 81, 82.*

SAME.—*Drafts.—Collection.—Negligence.—Measure of Damages.*—A bank receiving a sight draft for collection is held to strict vigilance

in making presentment for acceptance, and if the debt is lost through the negligence of the bank the measure of damages is, prima facie, the amount of the bill. *pp. 82, 83.*

BANKS AND BANKING.—*Drafts.—Collection.—Notice.—Presentment.*— The fact that the drawer of a draft is insolvent is no excuse for the failure of the collecting agent to give the indorsee notice of the presentment and nonacceptance of the draft by the drawee. *p. 83.*

SAME.—*Drafts.—Insolvency of Drawer.*—An answer to a complaint in an action against a collecting agent for damages for failure of such agent to present a draft sent by plaintiff for collection, and to give plaintiff notice of the, nonacceptance thereof, which alleges that the drawer was insolvent at the time the draft was drawn would not constitute a defense to such action, as insolvency does not mean a total want of property. *pp. 83, 84.*

SAME.—*Action for Damages Against Collecting Agent.—Pleading.*— *Answer.*—No error was committed in sustaining a demurrer to an answer to a complaint in an action for negligence in presenting a draft for acceptance which did not deny any of the allegations of the complaint but merely pleaded facts in mitigation of damages, as the facts so pleaded were admissible under the general denial. *pp. 84, 85.*

EVIDENCE.—*When Not in Record.*—Where the evidence is not in the record it will be presumed that the judgment is sustained by the evidence. *p. 85.*

From the Dearborn Circuit Court. Affirmed.

*Givan & Givan* and *Warren N. Hauck*, for appellant.

*George M. Roberts, Charles W. Stapp* and *Bennett & Davidson,* for appellee.

COMSTOCK, J.—This action was begun in the court below by the appellee bank to recover from the appellant bank damages for the failure of appellant to perform properly its duty as collecting agent of the appellee in the collection of a draft. A general denial and six special paragraphs of answer were filed, to each of which special answers appellee's demurrer was sustained. The cause went to trial upon the complaint and the general denial, resulting in a verdict and judgment for appellee, from which judgment appellant has appealed to this court, assigning as its

alleged errors the ruling of the court in overruling its demurrer to the complaint, and the sustaining of appellee's demurrer to the second, third, fourth, fifth, sixth and seventh paragraphs of answer. The complaint, which is in one paragraph, omitting the formal part is in substance, as follows: The appellee, a national bank of Greensburg, Ind., on the 29th day of July, 1895, became the purchaser and indorsee from H. C. Stockman, of that city, of a sight draft for $500.00 drawn by him on that day on the G. Y. Roots Company, of Lawrenceburg, Indiana, and made payable to his own order (setting out the draft and indorsements), the appellee paying therefor $500.00, and on the same day forwarded it to appellant bank, at Lawrenceburg, Indiana, for collection. Appellant bank received said draft on said day, and, for a valuable consideration, then undertook, as required by the law merchant and custom of banks, duly and promptly to present said draft to the G. Y. Roots Company for acceptance, and give or cause to be given due notice of nonacceptance to appellee in case of said company's refusal to accept, and, in case of acceptance to present said draft upon the last day of grace, and demand payment thereof, and, if payment was refused, to give to the appellee due notice of such nonpayment, and to cause all necessary protest to be made and steps to be taken to bind fully the drawer of said draft, to protect this appellee as indorsee thereof, and then undertook to collect such draft for appellee, and use all due and proper diligence to make such presentation for acceptance, and in taking such other requisite steps required by the law merchant and custom of banks. The appellant did not at any time present said draft to the G. Y. Roots Company for acceptance, and did not present said draft for collection, or demand of said company the payment

thereof until the 6th day of August, 1895, when appellant presented said draft to the said G. Y. Roots Company at its office, at said city of Lawrenceburg, and demanded payment thereof, and payment thereof was refused; whereas appellant could and should have presented said draft to the said the G. Y. Roots Company for acceptance on the 30th day of July, 1895, and in case acceptance was refused, could and should have caused notice thereof to have been mailed to appellee, which would have reached it July 31, 1895; and in case said draft was accepted, appellant could and should have presented such draft for payment on the second day of August, 1895, and, if payment refused, could and should have caused notice thereof to have been mailed to appellee on the same day, which notice thereof would have reached appellee on or before August 3, 1895, all of which would have been according to the law merchant and custom among banks.    From the time said draft was drawn until the 6th day of August, 1895, said the G. Y. Roots Company continued its business at said city of Lawrenceburg, continued to pay its bills and debts, and was present at its office at said city, through its officers and agents, all of said time; and, that on said last-named date it became hopelessly insolvent, and made a general assignment to Edwin M. Lee of all its property in trust for its creditors. Appellant caused said draft to be protested for nonpayment by notary public on the 6th day of August, 1895, and caused notice of said protest to be mailed to appellee on said day, which did not reach appellee until August 8, 1895, at which time said H. C. Stockman, drawer of the draft, had become insolvent, unable to pay his debts, and on said day made a general assignment of all his property in trust for the benefit of his creditors. From the time said draft was drawn continuously

until the 7th day of August, 1895, said Stockman continued in business at said city of Greensburg, of reputable credit, and continued to pay all bills and demands against him presented, up to and including the 7th day of August, 1895. Appellant failed to procure said draft to be accepted at any time, and at all times failed to give or cause to be given any notice to appellee of nonacceptance of said draft, if there was any such nonacceptance, and failed to cause said draft to be protested for nonacceptance, and did not give or cause to be given to appellee any notice whatever relative to said draft, or of any refusal or failure of acceptance or payment thereof until the notice of protest for nonpayment, before stated. After the protest of said draft, the same was returned by the appellant to the appellee and by the latter presented to said Stockman and payment demanded, and said Stockman failed and refused to pay the whole or any part of said draft, and still so fails and refuses. By reason of the premises, the appellant became liable to appellee for the damages by it sustained, and that appellee sustained damages by reason of such failure and neglect in the sum of $550.00, and asking judgment for that sum and all proper relief.

Appellant insists that the complaint is not sufficient, because of its failure to allege that the drawer of the draft, at the date he drew it, had money, funds, or property in the possession of the drawee, or that he had an arrangement with the drawee to pay the same, or any reasonable expectation that the draft would be honored when presented, or that the drawee was indebted to the drawer; that if the drawer had no means or money in the possession or control of the drawee, he had no reasonable expectation that the draft would be accepted or paid, and that the failure to present the same was not necessary, because ap-

pellee could, notwithstanding such failure, maintain an action on said draft against the drawer, and that he was not released from his liability thereon; that his liability was fixed without presentation and notice. *Culver* v. *Marks*, 122 Ind. 554, 17 Am. St. 377. In the case cited suit was brought by drawee against the representative of the drawer. In the cause before us the action is brought by the indorsee for a valuable consideration and forwarded to appellant for collection. Appellee was not bound to inquire whether the drawer had the right to draw, whether he expected it to be paid, or whether he had funds in his hands or under the control of the drawee. Appellee is presumed to be a *bona fide* indorsee, and, when appellant undertook the collection, it owed appellee the duty of taking proper steps for its collection. That duty grew out of the relation between the owner of the draft and the bank to which it was sent for collection. The complaint is for the negligence of the collecting bank, as the agent of the indorsee, in failing to take the steps required by the law merchant and the custom of banks. The draft, being a sight draft, required an acceptance to fix the date of its maturity, and, if accepted, required its presentation for payment the third day of grace. The complaint alleges that the draft was received by appellant bank on July 29, 1895. The drawee was in business, and had an office, agent and manager in the same town with appellant. It should have presented the draft on the same day, or on the next day after it was received. *Parker* v. *Reddick*, 65 Miss. 242, 7 Am. St. 646, 3 South. 575; *Dumont* v. *Pope*, 7 Blackf. 367; Daniel on Negotiable Instruments, vol. 1, sections 327, 454, 467, 476, 600; *Grange* v. *Reigh*, 93 Wis. 552, 67 N. W. 1130; *Selz* v. *Collins*, 55 Mo. App. 55; *First Nat'l Bank* v. *Miller*, 37 Neb. 500, 55 N. W. 1064, 40 Am. St. 499;

section 7528, Burns' R. S. 1894; Byles on Bills, pp. 299, 300; 1 Waites' Actions and Defenses 619.

Appellant's learned counsel further urge that the allegation of the complaint that the drawee remained in reputable credit, and continued to do business up to and including the 7th day of August, 1895, is not sufficient to warrant the conclusion that he was solvent and able to pay said draft; that he might have had reputable credit, and yet lack solvency, and not be able to pay the draft upon the failure of the Roots Company to accept or to pay the same. Citing *West* v. *St. Paul Nat'l Bank*, 54 Minn. 466, 56 N. W. 54. We find nothing in this case to support appellant's position. The foregoing are the only reasons urged in support of this assignment of error. The court properly overruled the demurrer to the complaint.

The second paragraph of answer alleges that, when Stockman drew said draft, he had no money or property in the hands of Roots Company belonging to him or in which he had any interest, nor had he reasonable ground to expect that the drawee would accept and pay the same, which plaintiff at the time well knew, and that said Stockman at the time he drew said draft was indebted to said Roots Company in excess of $3,000.00, which was due and unpaid, all of which was known to the plaintiff at the time of the alleged purchase. This answer attempts to plead that the drawer had no right to draw the draft, and that appellee, at the time it took it knew this fact. The facts alleged do not show a want of right to draw. These averments do not show that the indorsee would not have the right to presume that the drawee would accept the draft for accommodation; it does not show that the indorsee did not have the right to presume that the drawer would place funds in the hands of the drawee. They do not negative the fact that the

drawer intended to, and did afterwards, place funds in the hands of the bank to meet the draft at maturity. The knowledge brought home to the indorsee at the time of purchase of the draft was a knowledge of the circumstances then existing. It was not bound to assume that no arrangement for its acceptance would thereafter be made. No fraud on the part of the appellee is alleged, nor that the draft was drawn at the instance of appellee. The action being by an indorsee, the presumption of good faith must be indulged in its favor, and facts must be brought to its knowledge showing an absolute want in the drawee of the right to draw. The answer should have stated not only that the drawer had no funds in the hands of the drawee, but that there was no agreement or obligation of drawee to accept or pay the same, and that it was drawn without the intention on the part of the drawer thereafter to place funds in the hands of the drawee for such purpose, and that appellee had notice of such facts. Even if the indorsee knows at the time that there are no funds or reasonable ground on the part of the drawer to believe that the draft would be accepted or paid, he has the right to presume that such provision of funds will be made. There is no allegation that the drawer did not in fact provide such funds. To deprive an indorsee of his usual rights to notice of dishonor, facts showing fraud upon his part must be alleged. Daniels on Negotiable Instruments, vol. 2, section 1083; *Farmers' Bank* v. *Vanmeter*, 4 Rand. (Va.) 553; *Foster* v. *Parker*, 2 C. P. Div. 18.

The third paragraph of answer is substantially like the second, with the addition of the averment that the indorsement of the draft to appellee was in payment of an antecedent debt, and was not, therefore, a purchase for a valuable consideration. In *Stranghan* v.

*Fairchild*, 80 Ind. 598, it is held that the payment of an antecedent debt is sufficient to make the indorsee of the bill of exchange a *bona fide* purchaser.

The fourth paragraph of answer admits that the plaintiff and defendant had been corporations organized and doing business at the places as alleged in the complaint; that for more than a year and a half prior to the 29th day of July, 1895, plaintiff each week sent divers drafts drawn by said Stockman and other parties upon the said Roots Company for collection to defendant; that upon receipt of each of said drafts including the one described in the complaint, the defendant immediately gave notice to the Roots Company that it held the same for collection; that during said time no drafts or notes whatever, sent by plaintiff to defendant for collection against said Roots Company, were ever presented for acceptance or payment, and notice given plaintiff (unless defendant was instructed so to do) for nonacceptance or nonpayment, but that the same were held by defendant until paid by Roots Company, ranging any time from four to thirty days from receipt of each collection and after it was due and payable, and that the account of each collection as soon as made by defendant, was forwarded to and received by plaintiff, and no objection made to the delay in making each collection or failure to give notice to plaintiff of any collection paper on account of nonacceptance or nonpayment; and that on July 29, 1895, when the defendant received the draft mentioned in the complaint, it proceeded upon the same course as in former cases (having received no different instructions), and held the same in good faith, believing it would be paid as all others had been by said Roots Company; that plaintiff well knew that it was the custom of the defendant to hold all paper against Roots Company sent by plaintiff for collection

without notice to plaintiff of nonacceptance or non-payment, in which custom plaintiff acquiesced. This paragraph pleads a custom of appellant and appellee applicable only to paper sent by appellee against said Roots Company. It is too limited to control positive requirements of law. Usage can only regulate the manner of the performance of required acts; it cannot excuse nonperformance. *Adams* v. *Otterback*, 15 How. 539; 27 Am. and Eng. Ency. of Law, 782; *Woodruff* v. *Merchants' Bank*, 25 Wend. 673; Morse on Banks and Banking, section 224. This paragraph contains no averment that appellee constituted appellant its con-tinuing agent. The agency for the collection of each claim was an independent transaction, requiring corresponding duties. It appears that in all former cases collections were made and remitted. There was therefore no occasion to complain that there was any loss. There is no averment that appellee knew that prior claims had not been presented for accept-ance. A party may not by negligence make a custom to exempt him from liability on account of such negli-gence.

The fifth paragraph alleges that plaintiff, in consid-eration that Roots Company would pay all collection charges, etc., upon all drafts, etc., sent by defendant for collection against Roots Company, agreed that no such collection papers should be presented and notice given to said plaintiff of nonacceptance or nonpay-ment, and that the collection and nonpayment thereof might be delayed and held a reasonable time by said defendant, which was done with the draft in suit. This answer is contradictory in its averments. It admits that, under the agreement mentioned, notes and drafts were to be sent for collection; that they were not to be presented, and notice of nonacceptance and nonpayment was not to be given. It further

avers that collections might be held a reasonable time by the defendant. If the pleader means by reasonable time the time fixed by law merchant and custom of banks, there was in this instance a departure from the agreement, for that law requires that when the collection agent and the drawee are residents of the same town, the presentment for acceptance should be not later than the day after it is received. The complaint avers that it was not presented for acceptance at any time. The matter was clearly provable under the general denial, because the complaint avers that appellant received the draft for collection, and undertook as required by law merchant and custom of banks, promptly to present said draft to said Roots Company for acceptance, and give notice of nonacceptance, etc., and cause all proper steps to be taken, etc.

The sixth paragraph alleges that prior to July 29, 1895, plaintiff entered into an agreement with E. D Moore, vice president of Roots Company, who was also president of said defendant bank, that in consideration that said Roots Company would pay plaintiff interest on all drafts sent by plaintiff to defendant directed to Roots Company, from the time drafts were received by said defendant until paid, and all charges for collecting said drafts, defendant might hold said drafts a reasonable time without notice of nonacceptance or nonpayment; that, in consideration of said agreement, defendant held drafts a reasonable time for payment, without notice to plaintiff of nonacceptance and nonpayment, and the Roots Company paid defendant all collection charges and said holding of said draft was ratified by plaintiff; that the defendant held the draft in suit as it had held all previous drafts sent by plaintiff on Roots Company a reasonable time for payment and, while holding said draft, said Roots

Company failed; that, during the time said draft was so held, defendant had no knowledge that said Roots Company was in embarrassed circumstances, but believed said company was solvent until it made an assignment, on the 6th of August, 1895. This paragraph, like the fifth, states no time for which the plaintiff was to be allowed to hold draft without notice of nonacceptance or nonpayment. The expression, "reasonable time," must therefore be interpreted by the rules of the law merchant and the custom of banks. Ignorance of the insolvent condition of the drawee would not excuse appellants' negligence. This paragraph alleges, also, that said Roots Company did not continue in business and pay its bills to the day of its assignment, on August 6, 1895, and that the drawer, Stockman, did not continue in business and of reputable credit, and to pay his bills up to August 8, 1895, when he made an assignment. These allegations are but a denial of those to the contrary in the complaint. Omitting these special denials, this answer presents the question whether mere insolvency of the drawer is a sufficient answer to show that the indorsee of such drawer would not be damaged by the negligence of his collecting agent in not duly presenting and giving notice. It presents further questions whether or not the fact that a drawer is without funds in drawee's hands, or any right so to draw, and who for that reason remains liable unto indorsee, or subsequent holders without presentment, demand, or notice, so that an indorsee's right of recourse is still preserved against such drawer, is a sufficient defense to an action for negligence in failing to make such presentment, etc. Where a drawer who is and remains solvent, draws a draft, without funds or right,

and under such circumstances as that his liability and right of recourse on him is preserved to his indorsee without presentment, demand, or notice, and where, by reason of such drawer remaining solvent, no particular advantage would be gained by indorsee receiving prompt notice, then, in such case the delay of his collecting agent could do such indorsee no harm, and said agent would therefore not be liable for such negligence beyond mere nominal damages.

It is* also the law that although the drawer by reason of his want of funds and want of right to draw, remains liable on his indorsement without presentment, demand, or notice, and the indorsee's right of recourse still exists, yet there is still a liability of the negligent collection agent because of the fact that by his neglecting to present for acceptance, etc., and give notice, he has deprived indorsee of the prompt notice which would or might have enabled him to have prompt recourse on the indorser, thus giving him an opportunity or chance to have obtained payment or security from his immediate indorser before such indorser's failure, assignment, or bankruptcy.

In Chitty on Bills (12 Am. ed.), *330, it is said: "The death, bankruptcy, or known insolvency of the drawee or his being in prison constitute no excuses, either at law or in equity, for the neglect to give due notice of nonacceptance or nonpayment, because many means may remain of obtaining payment· by the assistance of friends or otherwise, of which it is reasonable that the drawer and indorsers should have the opportunity of availing themselves, and it is not competent to the holders to show that the delay in giving notice has not in fact been prejudicial."

In *Allen* v. *Suydam*, 20 Wend. 320, in which the questions here involved are so ably discussed and

many authorities cited, it is held that an agent receiving for collection before maturity a bill payable on a particular day after date is held to strict vigilance in making presentment for acceptance; that, if the debt is lost through his negligence, the measure of damages is *prima facie* the amount of the bill; that the defendant is at liberty to show circumstances to reduce the recovery to a nominal amount. See, also, Daniel on Negotiable Instruments, sections 1171-1172.

The law does not permit the collecting agent to decide in advance that, because the drawer may have in fact been insolvent, that therefore the indorsee, from pursuit of his rights of recourse, would not have availed. If the collecting agent fails to give his principal and indorsee the benefit of such choice he is liable. *Tyson* v. *State Bank*, 6 Blackf. 225; *American Express Co.* v. *Haire*, 21 Ind. 4; *Chapman* v. *McCrea*, 63 Ind. 360; *Exchange Nat'l Bank* v. *Third Nat'l Bank*, 112 U. S. 276; Daniel on Negotiable Instruments, section 329.

The insolvency of the drawer would not necessarily have prevented the collection from the drawer. Insolvency does not mean a total want of property. The insolvent debtor may yet have means to secure or pay the diligent creditor. The answer does not negative the possibility that the drawer might have secured the assistance of friends, or have himself secured the appellee. The presumption is that he was not "financially able to raise the money, means, or credit to pay said draft," etc.; "that he was without credit or means with which to pay the owner of said draft." He still may have had property with which he could have secured the draft, or friends who would have come to his relief, or even money with which to pay a part of the draft, so far as anything appears from this answer. Many business men, when unable longer to meet the

demands against them, are, through the assistance of friends enabled to pay their debts for many months after they have been insolvent. This paragraph of answer does not undertake to show that appellee did not have a right of action at the time he commenced suit. The negligence of appellant is not denied or excused. That appellee was a purchaser for value is not denied. There is no showing of any agreement excusing appellant from performance of its duty. It concludes: "Wherefore said defendant says it is not liable as alleged in plaintiff's complaint, but, if at all, only for nominal damages." We think it may be fairly construed as plead only to the amount of damages recoverable, and, as such, if it contained a good defense to reduce the damages to a nominal sum, was admissible under the general denial. In the *First National Bank* v. *Fourth National Bank*, 77 N. Y. 320, a case cited by appellant, the court said: "In *Bank of Scotland* v. *Hamilton*, cited in *Allen* v. *Suydam*, where the agent by his negligence in not sooner presenting the bill for acceptance, became *prima facie* liable for the whole amount thereof, he was allowed in mitigation of damages a dividend which his principal would be entitled to out of the drawer's assets in bankruptcy." In the trial of this cause below, appellant could have shown in mitigation, under its general denial, that the appellee, though not having a timely recourse on the drawer to which it was entitled, yet in fact did have an ultimate recourse, which would have realized a dividend from the drawer's assigned property in the hands of the drawer's assignee, and could have reduced or mitigated the damages to that extent.

"In all these cases, the negligence of the agent being established, it is a question of damages, and the agent may show, notwithstanding his fault, that his

principal has suffered no damages, and the recovery can then be for nominal damages only.   He may show, in reduction of the damages, that if he had used the greatest diligence the bill would not have been accepted or paid, or that his principal holds collaterals, or has an effectual remedy against the parties to the bill." *First Nat'l Bank* v. *Fourth Nat'l Bank, supra.*   In this view there was no error in sustaining the demurrer. *Reagan* v. *Long's Administratrix,* 21 Ind. 264; *Smith* v. *Lisher,* 23 Ind. 500.

The complaint avers that the indorser continued in business, and was of reputable credit, and paid his bills, up to the 7th of August, and that after the draft was returned, it was presented to the drawer, payment demanded of him, and refused.   The complaint showed a right to substantial damages, and, as the evidence is not in the record, it must be presumed that the judgment was right on the evidence.   Elliott's App. Proc., sections 709-725, inclusive; *Wharton* v. *Wilson,* 60 Ind. 591.

The insufficiency of the special paragraph of the answer is urged by appellee's counsel, upon grounds other than those herein referred to, but we do not deem it necessary to consider them.   We have not mentioned all the authorities referred to by the learned counsel for appellant, but they are not in conflict with the authorities herein cited.   There is no error.   The judgment is affirmed.