AMERICAN NAT. BANK v. BANK OF BANDON. *

(Circuit Court of Appeals, Ninth Circuit.  March 19, 1917.)

No. 2765.

BANKS AND BANKING ⌾⇒175(3)—COLLECTIONS—ACTION FOR NEGLIGENCE—EVI-
DENCE—LOSS.

In an action by a bank to whom a draft was payable against its cor-
respondent bank to whom it indorsed the draft for collection to recover
damages for the latter's negligence in notifying the payee bank that the
draft had been accepted by the drawee, when in fact acceptance had been
refused, and in failing to protest the draft and to notify the payee bank
for ten days thereafter, during which time a cargo of lumber which the
payee might have attached was shipped by the drawer, evidence that the
drawer was insolvent at the time and largely indebted to the drawee,
and that if the lumber had been attached the drawee could have filed a
petition in bankruptcy against the drawer as was done within a short
time, is not admissible to show that the payee bank lost nothing because
of its correspondent's negligence, since it cannot be assumed that the
drawer, though insolvent, could not have secured the money to meet the
draft in some way.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 640–
646.]

In Error to the District Court of the United States for the Second
Division of the Northern District of California; Wm. C. Van Fleet,
Judge.

Action by Bank of Bandon against the American National Bank.
Judgment for the plaintiff, and defendant brings error. Affirmed.

The Bank of Bandon, an Oregon bank, brought action against the American
National Bank in San Francisco to recover $5,887.78 and interest arising out
of failure of the American Bank to notify the Bandon Bank promptly of the
refusal of the drawee of a draft that the draft was dishonored. After trial by
jury, verdict and judgment went for the Bandon Bank, and the American
Bank brought the case to this court.

It appeared that before December 15, 1913, the American National Bank was
the correspondent of the Bank of Bandon; that the Alfred Johnson Lumber
Company, a customer of the Bandon Bank, was then engaged in shipping lum-
ber between Bandon, Or., and San Francisco, Cal.; that on divers occasions
before December 15, 1913, the lumber company referred to had drawn its
draft in favor of the Bandon Bank on the Robert Dollar Company, a San Fran-
cisco corporation, against cargoes of lumber shipped from Bandon to San
Francisco. The custom was for the Bandon Bank to forward such drafts to
the American National Bank for collection, and, upon receipt from the Ameri-
can Bank of the notice of acceptance of the drafts sent by the Bandon Bank,
the Bandon Bank would pay out money thereon to the Johnson Lumber Com-
pany, and there was an understanding between the two banks to the effect
that, if any draft forwarded by the Bandon Bank to the defendant for collec-
tion should be dishonored or refused payment in excess of $500, the San Fran-
cisco bank should immediately notify the Bandon Bank by telegraph. On De-
cember 15th, the Johnson Lumber Company made its draft upon the Robert
Dollar Company of San Francisco for $6,000 at 60 days sight payable to the
order of the Bank of Bandon, and on December 15, 1913, the lumber company
delivered the draft to the Bandon Bank, and the Bandon Bank indorsed on the
back of the draft as follows: "Pay to the order of the American National
Bank, San Francisco, Cal.  All prior indorsements guaranteed.  Bank of Ban-
don, Bandon, Or.  F. J. Fahy, Cashier."  In accordance with the custom estab-
lished between the two banks, the Bandon Bank forwarded the draft to the

⌾⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied May 14, 1917.

San Francisco bank, and on December 19, 1913, the San Francisco bank notified the Bandon Bank of the acceptance of the draft by the drawee, the Robert Dollar Company. In fact, however, the draft was not accepted, for on December 19th the draft was refused by the Robert Dollar Company; but the defendant bank did not notify the Bandon Bank of refusal of acceptance until December 29, 1913.

It appeared that the defendant bank did not cause the draft to be protested until December 30th, and did not send any notice of protest or dishonor of the draft to the lumber company, the drawer, until notice of protest and dishonor was mailed to the lumber company in Bandon, Or., on December 30, 1913, the notice being received at Bandon, January 3, 1914; that the Bandon Bank paid out to the lumber company $5,887.78 for its pay roll for labor employed to produce a certain cargo of lumber of the value of $12,000, and that before December 29, 1913, and after the 19th of December, 1913, the cargo of lumber was shipped at Bandon to San Francisco; that, if the Bandon Bank had known that the draft had not been accepted, it could and would have brought suit against the lumber company for $5,887.78, and could and would have attached the cargo of lumber, but that, by reason of the advice of acceptance and for no other reason, the Bandon Bank failed to bring suit against the Johnson Lumber Company to recover, and did not attach the cargo of lumber. Shortly after December 29, 1913, the lumber company became insolvent. Before the receipt of notice of dishonor, the Bandon Bank had paid out the full amount involved in this controversy.

It appeared, also, that the cargo of lumber shipped to San Francisco about December 29th was there sold by the Robert Dollar Company for about $12,000, which sum was applied by the Dollar Company on an indebtedness of over $100,000 due by the lumber company to the Dollar Company. When the draft was refused by the Robert Dollar Company and the American Bank notified the Bank of Bandon by telegram that the draft was not accepted, it advised the Bandon Bank that it would return the paper without protest. The Bandon Bank on December 29th, by telegram, declined to accept the return of the draft, saying it had paid out on notice of acceptance of the 19th, and notice of dishonor came too late to enable it to protect itself. The next day, December 30th, the attorney for the Bandon Bank telegraphed to the American Bank that the Bandon Bank had no lien on any shipment and asked for advice. On December 30th protest for nonacceptance was formally made in San Francisco. There is evidence to show that the Bandon Bank had no knowledge of the heavy debt due by the lumber company to the Dollar Company.

Edgar C. Chapman and William P. Hubbard, both of San Francisco, Cal., for plaintiff in error.

Mastick & Partridge and John S. Partridge, all of San Francisco, Cal., for defendant in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). It goes without saying it that the American Bank in San Francisco was negligent in notifying the Bandon Bank on December 19th that the Robert Dollar Company, drawee of the draft, had accepted it, when the fact was that that company had on that same day refused to accept it, and in failing until December 29th to notify the Bandon Bank of the refusal of acceptance by the drawee. The president of the Bandon Bank testified positively that when the draft was drawn he believed the lumber company solvent, and that if he had known of the dishonor of the draft upon the drawee company he could and would have attached the cargo of lumber which was afterwards, about December 24th, shipped to San Francisco. With this evidence in support of the allegations of the complaint, evidence by the American

240 F.—40

Bank to show that as a fact the lumber company was heavily in debt to the drawee Dollar Company between December 15th and 29th could not take away liability of the American Bank for its double carelessness; nor could any statement made on the trial by the officers of the Dollar Company as to what course that company would have taken if the American Bank had correctly notified the Bandon Bank and if perchance the cargo of lumber heretofore referred to had been attached or was about to be attached by the Bandon Bank. The material question is: What was the effect of the negligence of the American Bank upon the rights of the parties to the present action? The American Bank contends that upon proof that upon January 14, 1914, the lumber company made a composition agreement for the benefit of its creditors, it was error in the District Court to reject evidence to show that on December 19th and until December 29th the lumber company was in fact insolvent, in that it then had no assets which the Bandon Bank could have seized and retained by attachment to satisfy its claim, and that therefore the Bank of Bandon would at that time have been in no better position to protect itself than it was after December 29th, and as a consequence that the negligence of the American Bank was not the direct and proximate cause of any loss sustained by the Bandon Bank. We cannot sustain this reasoning.

It may be that, if the Bank of Bandon had attached the lumber before it was shipped to San Francisco, the Dollar Company would have forced the lumber company into bankruptcy, and it may be that, if it had done so, any advantage accruing to the Bandon Bank by reason of such attachment would have been lost. But the law of mercantile transactions will not permit such an hypothesis to be constructed by the drawee of the draft for the purpose of relieving the collecting bank of performing its legal duty of presentation and protest as required by the statutes of the state in which the draft is to be paid. Sections 3155, 3224–3228, of the Civil Code of California. The specific facts here are that when the lumber company drew the draft, and the Bandon Bank put the amount of it, less a small sum, to the credit of the lumber company, the lumber company was carrying on its business and was in the good credit which it had theretofore enjoyed with the Bandon Bank, which was advised of presentation and acceptance and never knew at any time prior to December 29th that the drawee had in fact refused to accept the draft. The situation therefore was not one where the collecting agent was negligent merely in not duly presenting and then notifying the forwarding bank. The American Bank did duly present the draft and did promptly notify the Bandon Bank; but, as the notification sent was that the Dollar Company had accepted the draft, the Bandon Bank in its usual course was fully justified in acting in accord with the advice of acceptance and paying out the amount of the draft upon the checks of the lumber company. Not only nondirection, but also misdirection, is attributable to the American Bank. The lumber company was a going business concern before the notice of dishonor was sent, and evidence that it was in fact without sufficient assets to pay its debts or even insolvent was no excuse for the neglect of the American Bank. This is so because the effect of the mistake and negligence of the American Bank was to mislead the

Bandon Bank and to deprive it of right of opportunity to seek prompt recourse against the lumber company, whereby it might have obtained payment or security from the lumber company before the date when it was forced into involuntary bankruptcy. Chitty on Bills (12th Ed.) *449, lays down the rule as follows:

"The death, known bankruptcy, or known insolvency of the drawee or acceptor, or maker of a note, or an offer of composition by the acceptor not acceded to with a declaration, in the presence of the drawer and holder, that he (the acceptor) had not and should not provide for the bill, or his being in prison, or the notorious stopping payment of a banker, constitute no excuses, either at law or in equity, or in bankruptcy, for the neglect to give due notice of nonacceptance or nonpayment; because many means may remain of obtaining payment by the assistance of friends or otherwise, of which it is reasonable that the drawer and indorsers should have the opportunity of availing themselves, and it is not competent to the holders to show that the delay in giving notice has not in fact been prejudicial."

In Granite Bank v. Ayers, 16 Pick. (Mass.) 392, 28 Am. Dec. 253, where misinformation was given to a notary as to the residence and financial standing of the makers of a note, it was held to be no excuse for want of presentment and demand that the promisors had failed in business.

In Citizens' National Bank v. Third National Bank, 19 Ind. App. 69, 49 N. E. 171, the Appellate Court of Indiana considered the question whether mere insolvency of the drawer of a draft is a sufficient answer to show that the indorsee of such drawer would not be damaged by the negligence of its collecting agent in not duly presenting and giving notice. The court held that although the drawer by reason of want of funds and want of right to draw remains liable on indorsement without presentment, demand, or notice, and the indorsee's right of recourse still exists, there was still a liability of the negligent collection agent, because by neglecting to present for acceptance and giving notice, the collecting agent has deprived the indorsee of the prompt notice which would or might have enabled him to have prompt recourse on the indorser, thus giving him an opportunity or chance to have obtained payment or security from his immediate indorser before such indorser's failure, assignment, or bankruptcy. The court said:

"The law does not permit the collecting agent to decide in advance that, because the drawer may have in fact been insolvent, therefore the indorsee, from pursuit of his rights of recourse, would not have availed. If the collecting agent fails to give his principal and indorsee the benefit of such choice, he is liable."

To like general effect may be cited Hawley Dodd & Co. v. Jette & Clark, 10 Or. 31, 45 Am. Rep. 129; Grimes v. Tait, 21 Okl. 361, 99 Pac. 810; Welch v. Taylor Mfg. Co., 82 Ill. 579; Smith v. Miller, 52 N. Y. 545.

These views sufficiently cover the points involved in the errors assigned.

We find no prejudicial error, and the judgment is affirmed.