Bonebrake *v*. The Board of Commissioners of Huntington County.

No. 17,057.

BONEBRAKE *v*. THE BOARD OF COMMISSIONERS OF HUNTINGTON COUNTY.

PLEADING.—*Overruling Demurrer to Paragraph of Answer.—Harmless Error.*—Where a paragraph of answer amounts to but a denial of a corresponding allegation of the complaint, it is harmless error to overrule a demurrer to it, where the same facts are provable under the general denial, which is pleaded.

EVIDENCE.—*Expert Testimony.—Bridge.—Personal Injury.*—In an action for injuries sustained by reason of a defective bridge, experienced bridge builders who had made an examination of the bridge immediately after the accident, may state whether, in their opinion, if the bridge so made had been kept in repair it would have safely borne the load placed upon it, which would have tended to show its condition at the time of the accident.

DEMURRER TO EVIDENCE.—*Inferences.*—A party demurring to evidence admits every inference and conclusion that may rightfully and reasonably be drawn therefrom.

BRIDGE.—*County Bridge.*—A bridge built by a township trustee over a creek which had been straightened and used also for a ditch for drainage is a bridge which the county is required to keep in repair.

SAME.—*Repair of.—Notice that Materials of Which it is Constructed Will Decay.*—Those whose duty it is to keep bridges in repair must take notice of the liability of wood and other materials of which they are composed to decay and wear out.

SAME.—*Presumption as to Use of.—Traction Engine.* -A bridge must be held to have been built in anticipation that traction engines will be taken over it, where such engines were in use in the neighborhood for many years previous to its construction.

From the Whitley Circuit Court.

*R. A. Kaufman, T. R. Marshall* and *C. W. Watkins,* for appellant.

*L. P. Milligan* and *S. E. Cook,* for appellee.

HOWARD, J.—This was an action for damages, brought by the appellant against the appellee for injuries alleged to have been caused by the breaking down of a bridge in Huntington county.

On change of venue to the court below, there was a trial resulting in a verdict for $7,000, in favor of the appellant.

A new trial being awarded, the honorable judge below was called to try the cause, which was again submitted to a jury. After the appellant, plaintiff on the trial, had submitted his evidence, the appellee, defendant below, demurred thereto, which demurrer was sustained by the court, and judgment for costs was entered against the appellant.

The errors alleged and discussed on this appeal, are:

1. The overruling of appellant's demurrer to the second paragraph of the answer.

2. The exclusion of certain testimony offered by the appellant.

3. The sustaining of appellee's demurrer to appellant's evidence.

It was alleged in the complaint that the bridge which had broken down and thus caused appellant's injury, "was a bridge across Clear creek, which it was the duty of said county to maintain and keep in repair."

In the second paragraph of the answer, to which appellant contends a demurrer was improperly overruled, it was averred, "that the bridge or culvert complained of, was not a bridge or structure which spanned a watercourse with defined bed and banks; but was a small bridge or culvert made to carry the surface water from said road away from it after heavy rains."

We do not think that appellant suffered from the ruling complained of. The averment in the paragraph of answer was but a denial of the corresponding allegation of the complaint, and, since the general denial was also pleaded, any fact which might be proved under the special answer might, in case the demurrer were sustained, be proved quite as well under the general denial.

The evidence, as to the exclusion of which complaint is made, consisted of certain expert testimony, the object of which was to show that if the bridge had been kept in good repair, as originally built, it would have safely sustained a much larger load than that under which it broke down. We think this testimony should have been admitted for that purpose. The witnesses were experienced bridge builders and had made examination of the bridge immediately after the accident. First detailing to the jury their observations and describing the kind of bridge they found, and its plan of construction, they might certainly be allowed to state whether, in their opinion, if the bridge so made had been kept in repair, it would have safely borne the load placed upon it. That would have tended to show its condition at the time of the accident.

Witnesses are not allowed to give their opinions in matters of which the jury can judge quite as well as they; but when a witness has been shown to be an expert, and when he states the facts upon which he bases his conclusions, his opinions may certainly be given for the information of the jury. The jury will, of course, judge of the force and weight of such evidence as of any other. *Eggers* v. *Eggers*, 57 Ind. 461, 7 Am. & Eng. Encyc. Law, 490–516.

In demurring to appellant's evidence the appellee expressly admitted ''all the facts stated by the witnesses, hereinbefore set out, and every inference and conclusion that may rightfully and reasonably be drawn therefrom.''

An examination of the evidence adduced by the appellant, taken in connection with the admission thus made, being likewise the admission implied in law in case of demurrer to evidence, leads to the opinion that

damage is shown to appellant, without his fault, and by reason of the negligence of appellee.

One McEnderfer, with his engineer and assistant, and accompanied by appellant, who was there by invitation, took his traction engine and tank cart upon the bridge in question—the four men riding—when the bridge gave way and the appellant was caught and injured between the tank and engine as they went down.

The bridge was upon a public highway and had been built by the township trustee about seven years previous to the accident. There had been a former bridge at that point. The bridge was over a branch of Clear Creek, a running stream. Some time before, by petition, the stream had been straightened and "a ditch made out of it."

For seven or eight years before the bridge in question was built, traction engines had been used for threshing grain in that neighborhood and had been taken over the highways and bridges. This engine and tank had gone over the bridge several times during the three years previous and had gone over it the day before the accident.

The bridge was supported by oak stringers two inches thick by eight or nine inches wide, originally set upon their edges upon wooden supports at either end. An examination, made after the accident, showed that the stringers had become somewhat decayed, and the nails in the planks above become rusted and loosened in the decayed timber. By want of proper bracing and by loosening of the end connections the stringers had partly turned sidewise, so that the weight of the load on the bridge did not rest directly on the edges, but partly on the sides of the stringers, and the load pressed them down until some of them broke and the bridge gave way.

Neither appellant nor any of those upon the engine and tender knew of the dangerous condition of the bridge.

The board of county commissioners, at a regular session, held about five months previous to the accident, had been petitioned to erect a new bridge in the place, the present bridge being claimed to be unsafe, but they had replied, "that they couldn't build bridges at every place in the county; that they thought the trustee ought to fix that matter."

One of the contentions is that the evidence shows that the bridge was one which the county was not required to keep up; that it was over a ditch and not a running stream. Several witnesses testified that the watercourse was a running stream, a branch of Clear creek; and that it was only made into a ditch by public proceedings for the straightening of the stream. Taking the evidence most strongly in favor of the appellant, as we must in case of demurrer, we think the bridge was one which the county was by law required to keep in repair.

In the Board, etc., v. Bailey, 122 Ind. 46, MITCHELL, J., in speaking for the court, said: "We do not mean to say that the power and duty of county commissioners in respect to the erection and repair of bridges is necessarily confined to structures over natural watercourses and flowing streams, but their duties relate to the erecting and keeping in repair of bridges over permanent watercourses, either natural or artificial, or over lakes, ponds, or more or less permanent and continuous bodies of water which obstruct the convenient use of a highway for public travel." See, also, Board etc., v. Wagner, Admr., 138 Ind. 609.

That the commissioners were mistaken in supposing that the county was not liable for the condition of the bridge, for the reason that it had been built by the town-

ship trustee, is clear from our decisions. *Board, etc.,* v. *Arnett,* 116 Ind. 438.

While it may be that the bridge was originally constructed of sufficient strength to withstand the loads which might properly be taken over it in public travel, yet it has been frequently decided that those who are required to keep such structures in repair must take notice of the liability of .wood and other materials of which they are composed to rot or rust and wear out or decay. This bridge had been erected about seven years, and the supports were laid directly in the earth, where the decay must be more rapid than usual. See *Board, etc.,* v. *Creviston, Admr.,* 133 Ind. 39. Not only the petition, therefore, asking for a new bridge by reason of the unsafe condition of the bridge in question, but also the time it had been built and the manner of its structure, constituted notice to the appellee of its dangerous character.

It appears that for many years previous to the construction of this bridge, traction engines were in use in the neighborhood; so that the bridge must be held to have been built in anticipation of the taking of such engines over it. *Board, etc.,* v. *Chipps, Admr.,* 131 Ind. 56.

We are therefore of opinion that the demurrer to the evidence should have been overruled. Considering this ruling, and also the ruling on the exclusion of evidence, we think that justice may best be done by awarding a new trial.

Judgment reversed, with instructions to grant a new trial.

Filed April 9, 1895.