Decided 3 July, 1905.

## RICE *v.* WALLOWA COUNTY.

81 Pac. 358.

INJURY TO TRAVELER OVER COUNTY BRIDGE—COMPLAINT—ALLEGING KNOWLEDGE OF DEFECTS BY COUNTY OFFICERS.

1. Allegations in a complaint that a stated county, through its agents and officers, allowed the stringers of a certain bridge to become rotten and unsafe by leaving them in the structure many years, that such defective and dangerous condition was well known to defendant county, and that a short time before the accident the county refloored the bridge, using the rotten stringers instead of replacing them with sound ones, are sufficient after verdict, both because it is thereby stated that defendant actually knew of the real condition of the bridge, and because it is fairly inferable from the facts stated that the defendant knew, or by the exercise of proper diligence could have known, of such condition.

INJURY TO TRAVELER OVER COUNTY BRIDGE—SUFFICIENCY OF EVIDENCE.

2. The evidence of the negligence of the county officials in reference to the condition of the bridge in question was ample to go to the jury and to justify a verdict for plaintiff.

PERSONAL INJURIES—SCOPE OF COMPLAINT—INTERNAL INJURIES.

3. Under a complaint showing that through the negligence of defendant plaintiff was thrown, thereby "producing serious and lasting internal injury to" her, it is competent to show that in consequence of being so thrown plaintiff has since suffered with heart trouble and neuralgia, for both may be classed as internal injuries, and it is possible that each may have been superinduced by the fall: *Maynard* v. *Oregon Railroad Co.,* 43 Or. 63, distinguished.

EXPERT WITNESS—QUALIFICATION.

4. A witness testifying that his business was farming, that he had set posts and built fences of different kinds, that he was acquainted with the probable age and soundness of the material used in defendant's bridge, that he had cut timber in the vicinity for twenty years, had had experience with timber buried in the ground in the form of bridge abutments, had done a good deal of such work and had watched it closely, and that he was not an expert, but knew how long that kind of timber would last, was qualified as an expert touching the length of time timbers of the kind would remain sound in the ground or where in contact therewith.

QUALIFYING EXPERT BY CROSS-EXAMINATION.

5. An error in holding a witness qualified as an expert, on examination in chief, is cured, where, on cross-examination, his qualification is shown.

SUBJECT OF EXPERT TESTIMONY—LASTING QUALITY OF TIMBERS.

6. Expert testimony is competent to show how long certain kinds of timber will remain sound under stated conditions, as, when partly covered with earth, that not being a matter of common observation or knowledge.

DEFECTIVE BRIDGE—RESULTING INJURY—PLEADING AND PROOF.

7. Though a complaint alleged that an injury to plaintiff resulted from the defective condition of bridge stringers, and made no mention of the condition of the planking, evidence as to the unsound condition of the planking when the bridge was redecked, prior to the accident, was evidentiary matter tending to show with what lack of care defendant maintained the bridge, and, being closely connected with the discovery by defendant's workmen, at the time, of the unsound stringers, could be considered on the question whether defendant had or should have had knowledge of the present condition of the bridge.

From Union: ROBERT EAKIN, Judge.

Statement by MR. CHIEF JUSTICE WOLVERTON.

This is an action by Settie E. Rice against Wallowa County, for the recovery of damages for personal injuries received by plaintiff while in the act of crossing a bridge upon the public highway which broke down, precipitating her into the bed of the stream below, thereby, as the complaint sets out, "crushing and bruising the plaintiff and breaking her breastbone and rib, and otherwise producing serious and lasting internal injury to her." The complaint further alleges:

"That the said dangerous and defective condition of the said county and public bridge was well known to the defendant county, and was due to the said county's gross carelessness and negligence, and said county had, through its agents and officials having supervision thereof, allowed the stringers of said bridge to become rotten and unsound by reason of having been in said bridge many years, which defective condition was known to the defendant, which had by its agents refloored the said bridge during the year and summer of 1902, and used the said rotten stringers again, wilfully neglecting to replace them with sound stringers, and this rotten condition of the said stringers and neglect on the part of the county was the direct cause of the said accident."

A trial was had before a jury, resulting in a verdict of $1,650. At the close of plaintiff's testimony, defendant moved for a judgment of nonsuit, which motion being denied, the trial was concluded, resulting in a judgment for plaintiff, from which defendant appeals.                                    AFFIRMED.

For appellant there was a brief over the names of *Clarence Harrison Crawford,* District Attorney, and *Daniel Webster Sheahan,* with oral arguments by *Mr. Sheahan* and *Mr. Thomas Harrison Crawford.*

For respondent there was a brief and an oral argument by *Mr. James Davis Slater.*

Mr. Chief Justice Wolverton delivered the opinion.

The question most earnestly insisted upon arises upon the motion for a nonsuit, and this involves two subsidiary questions: (1) Whether the complaint is sufficient, it being here challenged for the first time; and (2) whether there is evidence sufficient to go to the jury as it respects defendant's knowledge of the alleged defect, or of such state of facts from which defendant might and should have known of such defect if it had exercised reasonable diligence in the premises.

1. It can scarcely be doubted that the complaint is good after verdict. The rule, as stated in *Heilner* v. *Union County,* 7 Or. 83 (33 Am. Rep. 703), is that it must be alleged and proven that the county or its officers had knowledge of the defective or unsafe condition of the bridge, or such a state of facts must be set out from which they might with reasonable diligence have known the condition, and that they neglected and failed to repair within a reasonable time, following *Mack* v. *City of Salem,* 6 Or. 275. Transposing the language of the complaint for perspicuity, it sets out that the county, through its agents and officers, allowed the stringers of the bridge to become rotten and unsafe by reason of their having been in the bridge many years, and that said defective and dangerous condition was well known to the defendant county. This is an explicit statement of knowledge of the defect, if nothing else, and the complaint is therefore amply sufficient.

But it is insisted that the proofs fail to show actual knowledge, and that it was incompetent to show facts from which knowledge might be inferred, because no such state of facts is alleged as to admit of the latter species of proof. Recurring to the complaint again, after setting forth the matter about the stringers, it further states that such condition was known to the

defendant, and that defendant, by its agents, refloored the
bridge during the summer of 1902, and used said rotten string-
ers again, neglecting to replace them with sound ones.  Now,
conceding that these alleged facts are true, there is quite suffi-
cient, after verdict, from which it might be reasonably inferred
that defendant had notice or ought to have been apprised of the
condition if it had exercised the proper diligence in the ascer-
tainment of the fact.   True, the complaint might have been
drafted with greater accuracy, but it contains at least a defective
statement of a good cause of action, upon the theory that a state
of facts is shown by which the defendant might have known of
the true condition of the bridge by proper diligence.

2. The defendant goes further, however, and insists that the
evidence is insufficient, even under this theory, to carry the case
to the jury.  As to this there is evidence tending to show that
three out of four of the stringers in the bridge broke square
off at the point of contact with the earth upon which they
rested; that they were perfectly rotten where they broke; that
they consisted of tamarack poles which had been in use for from
12 to 14 years, and gave way at the smaller end; that a road
supervisor in 1900, the accident having occurred in August,
1903, made a repair by putting a plank in on the east end; that
he then noticed that the stringers, or at least one, was rotten,
and settled down into the earth; that where it rested on the
earth it was considerably decayed, and that he did not have the
means of fixing the bridge as it should have been; that a new
decking was put on in 1902, and that it was then discovered by
one of the workmen that one of the stringers was rotten, but
that this fact was not disclosed to the supervisor who was in
charge; and it was further shown that the ordinary life of a
tamarack stick used. in the manner of those stringers in that
locality is something like seven or eight years.  With this before
the jury, they could very properly draw the inference that the
defendant should have, by proper diligence, known of the unsafe
condition of this bridge, and the nonsuit was properly denied.
In support of these several conclusions see *City of Guthrie* v.
*Finch,* 13 Okl. 496 (75 Pac. 288), and *City of La Salle* v. *Por-
ierfield,* 138 Ill. 114 (27 N. E. 937).

[37—46 Or.]

3. The plaintiff, while a witness in her own behalf, was asked to state to the jury what were her symptoms as a result of the accident, to which she answered: "Well, I am bothered a great deal with my heart, shortness of breath, and I suffer a great deal with my breast." Objection was made to the question and answer without avail, and the action of the court in that regard is assigned as error. Dr. J. H. Thompson was also called, and testified that he attended the plaintiff for her injuries, and that afterwards, about a month or six weeks before the trial, he made an examination of her, and that she was bothered considerably with neuralgia of the chest as a result of the injury. Exceptions were also saved to this testimony. The objection insisted upon is that the complaint nowhere alleges that the injuries received resulted in heart trouble or neuralgia, and that those infirmities were not a natural or necessary result from the injuries alleged, and therefore that the evidence was irrelevant and inadmissible. The complaint, it will be seen by a reference thereto, is quite comprehensive as it respects the injuries received as a result of the accident, "otherwise producing," as it reads, "serious and lasting internal injury to her." Now, the examination as to each of these witnesses proceeded with a view to ascertaining the plaintiff's suffering or inconvenience as a result of the accident, and the answers were responsive. Either the heart trouble or the neuralgia might have been superinduced by the fall. They may be regarded as internal injuries, and come within the scope of the complaint: *Kircher* v. *Larchwood,* 120 Iowa, 578 (95 N. W. 184). The case of *Maynard* v. *Oregon R. Co.* 43 Or. 63 (72 Pac. 590), relates to an attempt to prove a result that could in no way follow from the injuries alleged, and is not to the purpose here.

4. Fred G. Otto was permitted to testify, on the part of the plaintiff, as to the length of time tamarack bridge stringers of the kind found in the bridge would remain sound and durable, he indicating that they would remain in that condition for a period of about seven or eight years. It was objected first that the witness did not qualify himself as an expert. He stated on his examination in chief that his business was farming, that he had set posts and built fences of different kinds, that he was

acquainted with the probable age and soundness of the material used, and, on cross-examination, that he had cut timber up there for 20 years, that he had had experience with timber buried in the ground in the form of bridge abutments, that he had done a good deal of that kind of work, and had watched it closely, and that he was not an expert, but knew how long that kind of timber would last. This development on the examination unquestionably qualified the witness as an expert touching the length of time timbers of the kind will remain sound in the ground, or where in contact therewith: *Washington Turnpike Co.* v. *Case,* 80 Md. 36 (30 Atl. 571); *Ferguson* v. *Davis County,* 57 Iowa, 601 (10 N. W. 906); *Buffum* v. *Harris,* 5 R. I. 243, 250. He had peculiar advantages for informing himself upon the subject, and presumed to know from his own experience, so that he was competent to testify in the capacity of an expert.

5. Whatever may be said of the witness's qualification to thus testify as developed on his examination in chief, the error, if any, committed in passing upon that question was amply cured on the cross-examination. The question was a preliminary one, but, if it should subsequently appear that the witness was qualified to speak as an expert, there could be no complaint.

6. Another objection is urged in this relation, which is by nature inconsistent with the position just discussed, namely, that the matter about which he was called upon to give his opinion lies within the range of the common observation and experience of all men, and that the facts should have been given to the jury, and they left to draw their own conclusion. We are unable to give our assent to this view. Manifestly, only such persons as have by observation and experience gained an adequate knowledge of the durability and length of time tamarack timbers will remain sound where coming into contact with the ground are competent to speak intelligibly upon the subject. People generally know but little about it, and must gain the knowledge from experience, or from the testimony of others who may have had the opportunity for informing themselves. All of which goes to show that the matter is for an expert. There was therefore no error in the ruling.

7. Otto was also permitted to testify touching the unsound and rotten condition of the planking when the bridge was redecked, and this is assigned as error, because the complaint makes no mention of the condition of these planks. This, however, was evidentiary matter, tending to show with what want of care the county authorities maintained this bridge in repair, and, being closely connected with the discovery of the rotten stringers by the workmen, it was pertinent to go to the jury for their consideration upon the question whether the defendant had notice, or ought to have had notice or knowledge, of the present defective condition of the bridge: *Shaw* v. *Sun Prairie,* 74 Wis. 105 (42 N. W. 271); *Kircher* v. *Larchwood,* 120 Iowa, 578 (95 N. W. 184).

Exceptions were also saved to certain instructions given by the court, in one instance modifying an instruction requested by the defendant. But as the grounds upon which the exceptions were predicated are the same in substance as those which it is claimed are fatal to the complaint and to plaintiff's case as against the motion for a nonsuit, it is unnecessary to notice them specifically, as what has been said adequately disposes of the questions presented with reference thereto. In further support of the views herein entertained, see *Bonebrake* v. *Board of Comrs.* 141 Ind. 62 (40 N. E. 141); *Rapho* v. *Moore,* 68 Pa. 404 (8 Am. Rep. 202).

Finding no error in the record the judgment of the circuit court will be affirmed.                                AFFIRMED.