Shirk *v.* Neible.

## SHIRK ET AL. *v.* NEIBLE ET AL.

[No. 18,875. Filed January 23, 1901.]

PLEADING. — *Bills and Notes: — Consideration.* — An answer of no consideration in an action on a negotiable note by indorsees is insufficient for failure to allege plaintiffs' notice of the infirmity of the note. *p. 68.*

HARMLESS ERROR. — *Overruling Demurrer to Bad Paragraph of Answer.* — A cause will be reversed on the action of the court in overruling a demurrer to a bad paragraph of answer unless it clearly appears from the record that the judgment rests upon some other paragraph of answer and that the ruling was harmless. *p. 68.*

ATTORNEY AND CLIENT. — *Confidential Relations. — Fees. — Bills and Notes.* — Where attorneys accepted employment in a criminal cause without fixing their fee, and after a partial performance of the services, and during the progress of the confidential relation, at the insistence of their client, fixed their fee on the basis of the work that might have to be done, and demanded that their client execute his note and mortgage for same, the transaction will be pre-

Shirk *v.* Neible.

sumed to be fraudulent, and the fee excessive, and, in an action on the note, the burden rests upon the attorneys to show that it was fair and the compensation reasonable. *pp. 68-71.*

BILLS AND NOTES. — *Fraud.* — *Notice.* — *Burden of Proof.* — *Special Finding.*—Where the holder of paper negotiable by the law merchant, to which the maker has exhibited a valid defense for fraud, relies upon the fact that he is a *bona fide* holder thereof for value, the burden is upon the holder to allege and prove that he bought the note without notice of the defenses, and the absence from the special finding of want of notice, in an action on the note, is equivalent to a finding upon such point against the party having the burden of proof. *p. 72.*

SAME.—*Fraud.*—*Consideration.*—*Notice.*—*Special Finding.*—Where, in an action on a negotiable note by the indorsee, want of consideration was pleaded by defendant, a finding that plaintiff had "no actual knowledge of the consideration for which said note was given" is not equivalent to a finding that plaintiff had no notice of the consideration and defenses. *pp. 72, 73.*

SAME.—*Fraud.*—*Consideration.*—*Notice.*—*Special Finding.*—Where a purchaser of a note of $3,000, secured by mortgage, knew that the maker and his two sons had been arrested on the charge of murder and the payees were attorneys who appeared for them at the preliminary examination ; that defendant was discharged at such examination and his two sons held in jail for the action of the grand jury; that the note was executed while the sons were in jail awaiting the action of the grand jury, and that the grand jury failed to indict the sons, and they were discharged, such knowledge was sufficient notice of the consideration of the note to put the purchaser upon inquiry. *pp. 73-75.*

SPECIAL FINDING.—*Omission of Facts Proved.*—*New Trial.*—*Venire De Novo.*—Where facts proved are omitted from the special finding the remedy is a motion for a new trial, not a motion for a *venire de novo. p. 76.*

From the Carroll Circuit Court.  *Affirmed.*

*A. W. Reynolds, L. D. Boyd* and *M. A. Ryan,* for appellants.

*M. Winfield* and *J. L. Sinkes,* for appellees.

HADLEY, J.—Foreclosure by appellants as indorsees against the maker of a promissory note governed by the law merchant. Answer in three paragraphs: (1) A general denial; (2) no consideration, and (3) fraud and failure of consideration, which went to the entire complaint except as

to the right of plaintiffs to recover and foreclose · as to
$100. A demurrer to each the second and third paragraphs
of answer was overruled. , Reply that appellants bought the
note. before maturity. for value, and without notice of the
fraud.

' Under repeated decisions of this court the second para-
graph of answer is insufficient for failure to allege appel-
lants' notice of the infirmity of the note. ·Coffing v. Hardy,
86 Ind. 369; First Nat. Bank v. Ruhl, 122 Ind. 279;
Galvin v. Meridian Nat. Bank, 129 Ind. 439, 441; Shirk
v. Mitchell, 137 Ind. 185, 194; Potter v. Sheets, 5 Ind.
App. 506. For this error the cause must be reversed unless
it shall clearly appear from the record that the judgment
rests upon some other paragraph of answer, and the ruling
harmless to appellants. Evansville, etc., R. Co. v. Maddux,
134 Ind. 571, 578; Miller v. Rapp, 135 Ind. 614; Tewks-
bury v. Howard, 138 Ind. 103; Ewbank's Manual §257.

The facts constituting the fraud are set forth with much
particularity in the third paragraph of answer. The facts
in the case as affirmed by the court's special finding are as
follows: November 6, 1896, a firm of learned and skilled
attorneys at law resided at Delphi, where for many years
they had practiced their profession· as partners. At said
date Louisa Nipple was shot to death in the cornfield of
appellee Daniel W. Neible, at dusk, while engaged in un-
lawfully taking corn. November 9, 1896, Neible and his
two sons, aged thirteen and sixteen, respectively, were ar-
rested upon a warrant issued by a magistrate charging them
with the murder of Mrs. Nipple, and· placed in jail to await
an examination. The homicide caused great excitement in
the community, and there were many circumstances· indi-
cating the guilt of the boys. At the time, Daniel W. Neible
was a well-to-do farmer residing on his farm with a wife and
four children, two boys and two girls, and neither he nor
either of his boys had ever before been charged with crime.
Neible was unfamiliar with proceedings in court and with

the value of the services of attorneys, and he and his wife were greatly alarmed and excited over the conditions surrounding them and their sons; on the night they were placed in jail Neible employed said attorneys to defend him and his boys. Neible at the time of the employment requested said attorneys to inform him what their charges would be for the service, and they informed him that it was impossible to determine at that time what services they would be called upon to render, but that their charges would be reasonable. The attorneys at once entered upon an investigation of the facts and circumstances attending the death of Mrs. Nipple and diligently prosecuted such investigation up to the time of the convening of the grand jury and were in daily communication with Neible and other members of the family regarding the case; said attorneys also appeared at the preliminary hearing before the magistrate and examined the witnesses and otherwise conducted said examination on behalf of Neible and his sons, and upon said preliminary hearing Neible was discharged from custody for want of criminating evidence against him, but his two sons were held without bail to await the action of the grand jury. On December 17, 1896, after the preliminary hearing and a few days before the meeting of the grand jury, Neible and his wife called at the office of their attorneys for the purpose of conferring with them respecting the defense of their sons then confined in jail, and without any previous thought of executing to their attorneys a note and mortgage for their fee; during this conference Neible again requested said attorneys to state what their fee would be, and upon Neible's insistence, said attorneys stated they would, if required to fix their fee at that time, consider all the work that might have to be done in the case, and would fix it at $3,000, which amount Neible then agreed to pay, whereupon the attorneys then *demanded* that Neible and wife execute to them the note and mortgage sued on, which they did on said December 17, 1896; the grand jury met on the following first Monday

Shirk *v.* Neible.

in January, and, having considered the evidence, refused
to indict either of the Neibles, and the sons were also there-
upon discharged from custody; the services of said attorneys
in and about the defense of the Neibles were worth $500, and
no more; if all of the Neibles had been indicted for murder
and tried separately therefor the services of their attorneys
would have been worth $3,000; May 5, 1897, said attorneys,
for a valuable consideration, and in the usual course of busi-
ness, assigned, before maturity, by indorsement, the note and
mortgage to the appellants; that at the time the appellants
took said note and mortgage the cashier of appellants' bank,
who transacted the business, knew that prior to its execution
the maker, Daniel W. Neible, and his two sons had been
arrested on the charge of murdering Mrs. Nipple; that they
had been examined before a magistrate and that said attor-
neys had appeared at said examination as their counsel, and
that the two sons had been bound over to await the action of
the grand jury on said charge and that they were in jail at
the time the note and mortgage were executed, but said
cashier, nor any officer of appellants' bank had actual knowl-
edge of the consideration for which the note was given.

It is shown by the third paragraph of answer and by the
special finding that on the night Neible and his sons were
thrown into jail the father employed said attorneys for their
defense.   At the first meeting, and before the employment,
and while the parties stood at arms length and upon an equal
footing, Neible was capacitated to make a contract with
respect to fees that the law would require him to keep.
Then there was no special confidence between them, no *vis
major,* to give one advantage over the other in making a
bargain.   At that time if an agreement could not have been
made to his liking Neible could have turned to other law-
yers without injury, or impairment of his defense.   But at
this first meeting, and before their employment, Neible re-
quested said attorneys to state the total amount of their fee
for the defense, and which they refused to do, assigning for

the refusal the same reasons that subsequently yielded to
their effort to do so. The employment made was a general
employment under which the attorneys were entitled to a
reasonable compensation for the services rendered, and hav-
ing accepted such employment and established a relation of
confidence that gave them vantage ground, the law thereby
stripped them of all power during the continuance of the
relation to contract with their client for a fee in excess of
fair compensation.    Therefore, these attorneys, having
agreed with their client during the progress of the confi-
dential relation as to the amount of their fee, and demanded
and taken a negotiable note and mortgage therefor, the law
presumes the transaction to be fraudulent, and the fee ex-
cessive, and the burden is laid upon the attorneys to show
by clear proof that it was fair, and the amount agreed upon
but a reasonable compensation for the services which they
had performed or would be called upon to perform under
their employment. . *French* v. *Cunningham*, 149 Ind. 632,
and authorities cited.    See, also, *McCormick* v. *Malin*, 5
Blackf. 509, 523; *Rochester* v. *Levering*, 104 Ind. 562,
568; *Ross* v. *Pason*, 160 Ill. 349; *Gray* v. *Emmons*, 7 Mich.
533; *Brown* v. *Buckley*, 14 N. J. Eq. 451; *Howell* v. *Ran-
som*, 11 Paige Ch. 538; *Merryman* v. *Euler*, 59 Md. 588,
43 Am. Rep. 564.

The record shows that the note and mortgage were exe-
cuted after the preliminary examination before the magis-
trate had been held, and but a few days before the convening
of the grand jury.. The boys had been denied bail and re-
manded to jail to await the action of the grand jury. The
community was in a state of excitement, and there were
many known circumstances indicating the boys' guilt. Nei-
ble and his wife were greatly alarmed and excited over the
conditions affecting their sons. They were unfamiliar with
legal proceedings and the value of attorneys' services, and
had not considered the subject of giving a note and mortgage
on the farm. They had gone to their attorneys' office for

counsel upon the momentous subject, burdened with that parental fear and anxiety naturally invoked by the gravity of the situation and the early submission of the facts to the stern judgment of the grand jury. They had gone to those learned in the law, and who had heard and tested the witnesses upon the preliminary hearing, and had inquired into the facts, and weighed the chances for a successful defense, and as against the advice and will of those in such superior position, in all matters pertaining to the defense, it is impossible that there could be in those in such stress an adequate power of assertion against unjust exaction. The law humanely takes cognizance of such situations, and as said in *McLean* v. *Equitable Life, etc., Soc.,* 100 Ind. 134, "The law is strong, and protects the weak and helpless against such machinations, and, being just, defeats their consummation." It is clear that appellee as maker had a partial defense against the payees of the note.

The law is well settled in this State that if the holder of paper negotiable by the law merchant, and to which the maker has exhibited a valid defense for fraud, relies upon the fact that he is a *bona fide* holder thereof, for value, the burden is upon him to aver and prove that he obtained such paper before maturity without notice of the defenses of the maker, and that he paid a valuable consideration therefor. *Baldwin* v. *Fagan,* 83 Ind. 447; *Mitchell* v. *Tomlinson,* 91 Ind. 167; *Eichelberger* v. *Old Nat. Bank,* 103 Ind. 401; *Giberson* v. *Jolley,* 120 Ind. 301; *Bank* v. *Ruhl,* 122 Ind. 279. Under this rule, appellants have the burden of proving their reply that they bought the note without notice of the defenses, and if the want of notice is an ultimate fact, to be stated in terms, material to the support of the complaint, its absence from the special finding will bring the question within the operation of the familiar rule that where a special finding is silent upon a point, it is equivalent to a finding upon that point against the party having the burden of proving it. We cannot accept the contention that "no

*actual* knowledge of the consideration for which said note was given" is equivalent to a finding that appellants had no notice of the consideration and defenses. The purchaser of commercial paper is not entitled to protection, if it is shown that he had actual knowledge of the vice of the paper; neither is he entitled to protection if it is shown that he had such credible information as would put a reasonable person upon inquiry. In all cases he is required to act in good faith, and as said in *Bank* v. *Leonhart,* 126 Ind. 206, "use reasonable diligence when such paper is offered for sale, under circumstances that are calculated to excite the suspicion of a reasonably cautious person." "We fully concede" as said by Mitchell, J., in *Schmueckle* v. *Waters,* 125 Ind. 265, 269, "the position that the holder of negotiable paper, who takes it before maturity in the usual course of business, without notice of facts which impeach its validity between antecedent parties, or of such facts as put him upon inquiry, holds it by a good title, free from defenses, and that unless there are circumstances which excite suspicion, the purchaser is not bound to make inquiry at the time of purchase. Where, however, the circumstances show that the purchaser of paper refrained from making inquiry lest he should thereby become acquainted with the transaction out of which the note originated, he cannot occupy the attitude of a holder in good faith without notice." See, also, *Tescher* v. *Merea,* 118 Ind. 586; *Bank* v. *Bennett,* 8 Ind. App. 679, 684; Daniel's Neg. Ins. §§769, 799. We must therefore inquire whether at the time the note was presented to appellants they were in a situation which placed them upon inquiry, and if they were, and inquiry would have disclosed the defenses, it must be held, in the absence of a finding upon that point, that they did have notice.

The record shows that said attorneys resided, and had for many years practiced their profession, as partners, in the city of Delphi; that appellants' bank, the court, and jail, were situate in the same place; that, when the note was

presented at the bank, the cashier, who discounted it, knew
that Neible and his two sons had been incarcerated in the
jail, charged with the murder of Mrs. Nipple; that at the
preliminary hearing before a magistrate in November, said
attorneys, whom he knew to be practicing law as partners,
appeared and conducted the defense for the Neibles; that
upon the preliminary hearing the elder Neible was dis-
charged from custody and that the two sons were held in
jail for the action of the grand jury. He also knew that the
note was executed while the boys were in jail awaiting the
convening of the grand jury, and that it was executed to
the attorneys in their partnership name. Can it be said that
these facts were not sufficient to create in the mind of a rea-
sonably cautious person a strong suspicion that the consider-
ation of the note was professional services rendered the
Neibles in their recent arrest for murder? These circum-
stances were so pointed and led so directly to that conclusion
that it seems incredible that the cashier did not at the time
entertain that opinion. The subject of the arrest and pre-
liminary trial being a matter of public notoriety, and of
which the cashier had actual knowledge, the failure of the
grand jury to indict and the discharge of the boys from
custody, which had occurred in the same town more than
three months before, we may reasonably assume was also
known to him, and so knowing, or entertaining a strong sus-
picion of the fact, he was undoubtedly put upon his inquiry
to ascertain whether $3,000 for professional services in the
preliminary hearing, for general counsel, and for all pos-
sible preparation for the defense prior to the action of the
grand jury, was not an excessive fee, and knowing that the
note and mortgage were executed several weeks after the
beginning of the service, and during the continuance of the
relation of attorney and client, he was also bound to know
that the courts would not enforce them beyond the point of
reasonableness.

The first conclusion of law is "that as between the payees

in the note and mortgage and the defendants the same are invalid, except as to $500, the value of the services actually rendered by the payees of the note to the defendant, as found in the special finding." This is in harmony with the doctrine laid down in *French* v. *Cunningham*, 149 Ind. 632, to the effect that in such cases there may be a recovery upon the contract for the reasonable value of services rendered. The second conclusion of law is "that the plaintiffs took the note and mortgage sued on subject to the defendants' defenses." And we so adjudge.

It remains to be determined whether it clearly appears from the record that the judgment rests upon the third paragraph of answer. Courts will not enforce a contract between the parties thereto that is not supported by a good or valuable consideration, that is, by something of value, or esteemed in law as of value, moving between the parties, which they have mutually agreed to exchange. This upon the principle that the law will not assist one who has not been damaged. Adequacy of consideration is not required. The law is satisfied if the parties freely agree to it. An answer of no consideration, therefore, advises the court that the contract sued on is not enforceable because it has no foundation to rest upon, and it has been repeatedly held that, under such a plea, the defense will fail if it is shown there was any consideration whatever for the contract. The amount of it is immaterial. *Kernodle* v. *Hunt,* 4 Blackf. 57, 59; *Wheelock* v. *Barney,* 27 Ind. 462; *Crow* v. *Eichinger*, 34 Ind. 65; *Mooklar* v. *Lewis*, 40 Ind. 1; *Wilson* v. *Town of Monticello,* 85 Ind. 10, 17. While, upon the other hand, an answer of fraud, or failure of consideration, travels upon an entirely different theory. An answer of failure of consideration implies that there was a consideration sufficient to support the contract, but that it has subsequently failed in whole or in part without fault of the defendant. In this case the third paragraph of answer, in effect, admits a consideration of $100, which is sufficient

to defeat the defense under the second paragraph of answer, and the court found that there was a valid consideration for the note and mortgage of $500, and gave judgment and decree of foreclosure for the same. This clearly shows that the judgment rests upon the third paragraph, and that appellants were not harmed by the overruling of their demurrer to the second paragraph. For reasons appearing in what has been heretofore said we hold that the conclusions of law were correctly stated.

Appellants' motion for a *venire de novo* was overruled, and they complain that the special finding was defective, among other things for failure to set forth "the time the note and mortgage became due, rate of interest, where payable, that it is or is not secured by mortgage, or the description of the real estate in said mortgage." The fourth conclusion of law is "that the plaintiffs are entitled to a judgment on the note in suit and a decree foreclosing the mortgage as to that amount or $607.50", and a judgment and decree were rendered accordingly. What difference can it make to appellants whether the matter complained of is in or out of the special finding, since they received all they ask for in their complaint, except as to amount. Unless they can show that they were injured in some way by the omission, which they do not attempt, this court cannot entertain their objection. *Harness* v. *Harness,* 81 Ind. 160. Furthermore, if facts proved by the evidence are omitted from the special finding, a *venire de novo* cannot be successfully claimed. The remedy is by motion for a new trial. Elliott's App. Proc. §759, and cases cited.

The motion for a new trial challenges some of the findings, and some omissions. We have carefully compared the evidence with such findings, and we fail to note any omissions, not in dispute, that can injure appellants, or any finding not sufficiently supported by the evidence. We find no available error. Judgment affirmed.