CONTINENTAL NATIONAL BANK OF INDIANAPOLIS. v. DISCOUNT AND DEPOSIT STATE BANK OF KENTLAND ET AL.

[No. 25,418. Filed June 30, 1927.]

1. PLEADING.—*Ruling on motion to strike out part of pleading not presented on appeal where words to be struck out not set out in motion.*— Under §424 Burns 1926, a motion to strike out part of a pleading must be in writing and set out the words sought to be stricken out, and a motion that does not comply with the statute is not in the record on appeal unless brought in by a bill of exceptions, and hence does not present any question for review. p. 298.

2. APPEAL.—*Overruling paragraph of answer that does not state a defense usually is error.*—As a general rule, the *overruling* of a demurrer to an affirmative paragraph of answer which fails to state facts sufficient to constitute a defense is error, notwithstanding the facts pleaded therein were admissible under another paragraph. p. 298.

3. APPEAL.—*Overruling demurrer not cause for reversal when cause fairly tried.*—Under the provisions of §368 Burns 1926, a judgment will not be reversed for overruling a demurrer if it appears from the whole record that the merits of the cause have been fairly determined. p. 299.

4. APPEAL.—*Overruling demurrer to insufficient paragraph of answer is usually harmful.*—Overruling a demurrer to an insufficient paragraph of answer will be declared harmful where the record fails to show affirmatively that the ruling was harmless, and this is not always the case when the facts pleaded were admissible under a paragraph of general denial (disapproving statements in *Goode* v. *Elwood Lodge*, 160 Ind. 251, 253, *Garn* v. *Houser*, 75 Ind. App. 364, 367, and *Burton* v. *Burton*, 77 Ind. App. 436, 438). p. 300.

5. TRIAL.—In a trial by jury, the jury is properly permitted to have the pleadings to advise it as to the issues, but not for any other purpose. p. 306.

6. APPEAL.—*Overruling demurrer to paragraph of answer held reversible in the specific case.*—In an action by one bank against another for damages resulting from defendant's negligence in regard to notes held by the plaintiff as indorsee, which had been sent to the defendant for collection, with instructions to present them for payment at maturity and, if not paid, to protest and notify the plaintiff of such nonpayment, the defendant having failed to comply with any of the instructions until plaintiff's indorser had become insolvent, the overruling of a demurrer to a paragraph of answer alleging that protest had been waived by plaintiff and that plaintiff had extended the time for protest, but not averring that there was any consideration for such extension or that such extension was communicated to the defendant, or that the plaintiff had instructed the defendant not to protest the notes, and which did not meet the allegations of the complaint as to failure to notify plaintiff of the nonpayment or to return them to plaintiff with reasons for non-collection, as required by plaintiff's directions, was reversible error, in view of instructions that plaintiff could not recover if it had waived protest as averred in the answer and other instructions emphasizing the matter of protest and making no reference to the other charges of negligence included in the complaint, especially where the jury was permitted to take the pleadings to the jury room. p. 307.

7. EVIDENCE.—*Receipt of letter properly addressed, stamped and mailed will be assumed.*—In the absence of evidence to the contrary, the courts will assume that a letter, properly addressed, stamped and mailed at Indianapolis to bank at Kentland, Indiana, was received by the addressee, in the usual course of the mail, not later than the second day thereafter. p. 308.

## 292    SUPREME COURT OF INDIANA,

8. BANKS AND BANKING.—*Duties of bank receiving notes for collection.*— In the absence of evidence to the contrary, a bank which has received notes for collection will be presumed to have accepted them for collection subject to the law merchant and banking customs, and, when accompanied by instructions, must either return the notes promptly or follow the instructions.    p. 308.

9. ·BANKS AND BANKING.—*Collecting bank is sender's agent and must take necessary steps to make collection.*—A bank with which notes payable thereat were deposited for collection is the sender's agent, and charged with the duty of taking the necessary steps to secure prompt payment at maturity, including presentation for payment at the due date.    p. 309.

10. . BANKS AND BANKING.—*Bank's presentment for payment of notes payable thereat.*—A bank at which notes are payable, having received them for collection, is not required to present them for payment, the fact that it stands ready to receive payment being equivalent to a formal presentment to the makers and indorsers.    p. 309.

11. BILLS AND NOTES.—*Protest of nonpayment, when not required.*— In the absence of express instructions to the contrary, a bank holding notes for collection is not required to protest their nonpayment when protest and notice thereof have been expressly waived by the makers and indorsers.    p. 309.

12. BANKS AND BANKING.—A collecting bank's failure to comply with sender's request for return of unpaid note until more than three months thereafter is negligence *per se.*    p. 309.

13. BANKS AND BANKING.—*Bank's negligence in regard to note received for collection.*—A bank's neglect diligently to perform all duties necessary to fix liability of anterior parties to a note sent to it for collection, including prompt notice of nonpayment to sending bank, constitutes negligence.    p. 309.

14. APPEAL.—*Disputed questions of fact not within province of appellate tribunal.*—Whether a bank that had sent its notes to another bank for collection had waived its instructions to protest nonpayment at maturity, or had knowledge of such nonpayment and was willing to let them stand as they were, or had granted the indorser additional time to obtain funds to make payment, and all other questions of fact about which the evidence was in dispute, are not within the province of an appellate tribunal.    p. 310.

15. BANKS AND BANKING.—*Measure of damages for negligence of collecting bank in regard to notes sent to it for collection.*—In an action by one bank against another for damages resulting from the defendant's negligence in failing to present notes for payment at maturity, and notify the sending bank of nonpayment, also in failing to protest the notes and to return them promptly on request, the measure of damages is the actual damage sustained as a proximate result of such omissions.    p. 311.

16. BANKS AND BANKING.—*Burden of proving that notes sent to bank for collection could have been collected.*—In an action against a bank to which notes had been sent for collection for damages by its failure to present them for payment at maturity, to protest the nonpayment and notify plaintiff thereof, and to return them promptly on request, the burden is on the plaintiff to show that the notes probably could have been collected had defendant been diligent. p. 311.

17. BANKS AND BANKING.—*Whether notes sent to bank for collection could have been collected had bank been diligent, for the jury.*—In an action against a bank to which notes were sent for collection for damages by its failure to present them for payment at maturity, to protest the nonpayment and notify the plaintiff thereof, the question whether the notes could have been collected had the defendant been diligent is for the jury. p. 311.

From Jasper Circuit Court; *George A. Williams,* Judge.

Action by the Continental National Bank of Indianapolis against the Discount and Deposit State Bank of Kentland and its receiver. From a judgment for defendants, the plaintiff appealed to the Appellate Court. (Transferred to the Supreme Court under §1351 Burns 1926). *Reversed.*

*Hanley & Hanley, H. L. Sammons, John W. Holtzman* and *John J. Kelly,* for appellant.

*Fraser & Isham, Stuart, Simms & Stuart* and *Emmett M. LaRue,* for appellees.

PER CURIAM.—Appellant, Continental National Bank of Indianapolis, brought this action against appellee, Discount and Deposit State Bank of Kentland, Indiana, and subsequently prosecuted it against its receiver, to recover damages on account of certain alleged negligence of appellee bank. A trial before a jury resulted in a verdict for appellees and judgment thereon followed, from which appellant appealed, alleging that the court erred in overruling its motion to strike out parts of appellees' seventh paragraph of answer; in overruling its demurrer to each of five affirmative paragraphs of answer; and, in

overruling its motion for a new trial, specifying therein that the verdict is not sustained by sufficient evidence and is contrary to law, and in giving and refusing to give certain instructions to the jury.

The complaint is in four paragraphs. The first and third relate to a note for $2,000, dated March 18, 1923, due ninety days after date, signed A. Messman and Company, and the second and fourth have reference to a note for $10,350, dated November 20, 1922, due six months after date, signed J. L. Williams. The drawers and indorsers of these notes severally waived presentment for payment, protest and nonpayment, and both notes were payable and negotiable at appellee bank to the order of Warren T. McCray who, on April 7, 1923, sold for value and, in the words "Warren T. McCray," indorsed these notes on the back thereof to appellant.

The·allegations common to the first and second paragraphs, referring to the respective notes therein, allege that on June 7, 1923, appellant delivered the $2,000 note, and on May 9, 1923, the $10,350 note to appellee bank for collection, with written instructions to protest the same if not paid at maturity, and that appellee bank, for a valuable and sufficient consideration, accepted the notes for collection and promised to use due diligence in presenting and demanding payment of the same from the makers, as required by the law merchant and customs of banking, and to give due notice of nonpayment to appellant and to protect it as indorsee thereof, but that appellee bank negligently failed to present the notes to the makers of the same on their maturity dates, and failed and neglected to notify appellant of the nonpayment of the notes, and negligently failed to return the notes to appellant until September, 1923; that from the date of maturity of each of these notes, the indorser, McCray, continued in business and of reputable credit, and continued to pay the demands made against him until Sep-

tember, 1923, when he became insolvent and made a general assignment of all his property in trust for the benefit of his creditors, and by reason of the various negligent acts of appellee, appellant has been damaged.

The third and fourth paragraphs respecting these notes, in addition to the foregoing facts, allege that the makers and indorser of these notes resided in Newton county, Indiana, at the time the notes became due; that McCray was president of appellee bank at the time it received the notes and until August 11, 1923; that on June 14, 1923, appellant telegraphed appellee to protest the notes if not paid, which it negligently failed to do; that McCray was, on May 9, June 7, and June 14, 1923, a patron of appellee bank and transacted a large amount of his business through it; that its officers and agents knew that on June 7, 1923, and on May 9, 1923, the makers and indorser were "pressed for money," and that many of the obligations of McCray were being presented at the bank, and, notwithstanding such knowledge, it retained the notes in its possession until September 19, 1923. In the meantime, McCray "continued to pay his obligations until August 6, 1923" when he ceased to pay his maturing obligations and became insolvent; that had appellee protested the notes when due and returned the same to appellant, as it was ordered to do, or had it protested the notes on June 14, and returned the same to appellant with the information it possessed concerning the financial condition of the makers and indorser of the notes, appellant would and could have collected them; that the makers of the notes are wholly insolvent, and that the property assigned by McCray in September for the benefit of his creditors is wholly insufficient to pay a nominal percentage of his indebtedness.

Appellees answered in seven paragraphs, the first being a general denial, the sixth was withdrawn, and a demurrer for want of facts to the others was overruled. Appel-

lant replied by a general denial, and to the fifth and seventh paragraphs by argumentative denials.

The second paragraph, in substance, averred that appellee bank never at any time agreed or undertook to protest either of the notes, but immediately upon their reception informed appellant that it would not undertake to protest the notes.

The material facts of the third and fourth paragraphs make it appear that appellant, at the request of the payee, first indorser, Warren T. McCray, expressly waived protest of both notes in consideration that McCray would make an effort to realize on his property and procure funds with which to pay the whole or a large part of these notes, which efforts appellant knew would be futile if protest was made.

The fifth paragraph averred that appellant knew at the time it sent the notes to appellee bank for collection that its only chance of realizing anything on the notes was out of the property of the indorser McCray, to whom it extended the time of protest indefinitely in order that he might have time to convert his property into money, which finally was agreed should be done by trustees under a trust agreement between McCray and his creditors, one of which was appellant; that at the time these notes became due, appellant was informed and knew that one of the notes was fictitious and both of the purported makers wholly insolvent, and nothing could be realized on either of them from the makers; that pursuant to the trust agreement, trustees were appointed, to whom, in August, 1923, McCray, his wife joining, conveyed all of his property for the benefit of his creditors, which property was administered by the trustees pursuant to the trust agreement which was made a part of this answer by exhibit.

The seventh paragraph averred that appellant, at the time it purchased the notes, relied solely on the credit of

McCray, and also by its averments it appears that before and at the time the notes came into the hands of appellee bank, the purported makers thereof were nonresidents and had no place of business, office, property or credit in the State of Indiana, and their post office address was wholly unknown to appellee bank; that McCray "had no place of business or office at the town of Kentland, Indiana," but was at all times sojourning at Indianapolis; that the makers and indorser were then, and continuously since that time have been, insolvent; that appellant, by its indorsement, expressly waived protest of the notes, and on receipt of the same from appellant, appellee bank notified McCray that it was unable to locate the makers of the notes and thereupon McCray informed appellant of the facts herein averred, and that the notes could not and would not be paid or collected from any other person than himself, "and that if a protest was made of said notes, his credit would be so far impaired that he would be rendered notoriously insolvent, and that he expressly waived the protest" thereof, and acknowledged himself solely liable for their payment.

While the second, third and fourth paragraphs of answer purport to answer the entire complaint, yet the material averments of each show they were directed to that part of the complaint alleging negligent failure to protest, and are, at most, only partial answers. But the fifth and seventh paragraphs clearly indicate that they were submitted and regarded as answers to the entire complaint, and were not sufficient to withstand a demurrer for want of facts.

McCray was president of appellee bank at the time the notes were received for collection, but it is not averred that he represented appellee bank in the various negotiations he had with appellant regarding the notes, nor does the fifth paragraph aver that the extension was for a consideration, or that the extension agreed upon be-

tween appellant and McCray was, by appellant, communicated to appellee bank, or that appellee bank was at any time instructed by appellant not to protest the notes, nor does it meet the allegations in the complaint of negligent failure to notify appellant of the nonpayment of the notes, or negligent failure to return the notes to appellant with a statement of the reasons why they were not collected months before the consummation of the trust agreement; nor do the averments of the seventh paragraph counteract the allegations of the complaint that McCray resided in Kentland and "continued to pay his obligations until August 6, 1923." Otherwise, the averments of this paragraph were directed to the protest allegations of the complaint, leaving the other material allegations relied on for a recovery unchallenged in any respect.

Before proceeding to further consider appellees' answers, it may be well to notice appellant's motion to strike out parts of the seventh paragraph. The motion did not set forth the words sought to be stricken out, as the Code requires. §424 Burns 1926, Acts 1903 p. 338, §2. By failing to observe §2, *supra,* the motion and ruling thereon are not in the record, and hence, on appeal, any question on that ruling is not presented. *Lehman* v. *City of Goshen* (1912), 178 Ind. 54, 62, 98 N. E. 1, 710; *Eagle Lake Ice Co.* v. *Munson* (1920), 73 Ind. App. 496, 127 N. E. 839.

We have already indicated that appellant's demurrers to each paragraph of answer should have been sustained, but, notwithstanding the insufficiency of each of these paragraphs to bar appellant's cause of action, appellees earnestly insist that all of the evidence admissible under each of the several paragraphs of answer was admissible under the general denial, and therefore the overruling of the demurrers should be regarded as harmless. The rule is not as broad as stated by

counsel for appellees.    The general rule is that the over-
ruling of a demurrer to an affirmative answer which fails
to state facts sufficient to constitute a defense is error.
This rule obtains, notwithstanding the same facts with
others pleaded in another paragraph of answer are suffi-
cient to state a defense, or in case the insufficient para-
graph is pleaded with a paragraph of general denial.
*Thompson* v. *Lowe* (1887), 111 Ind. 272, 12 N. E. 476;
*Messick* v. *Midland Railway Co.* (1891), 128 Ind. 81, 27
N. E. 419; *Scott* v. *Stetler* (1891), 128 Ind. 385, 27 N. E.
721; *McCormack* v. *Sweeney* (1895), 140 Ind. 680, 40 N.
E. 114; *Pyle* v. *Peyton* (1896), 146 Ind. 90, 93, 44 N. E.
925; *Lockwood, Admr.,* v. *Woods* (1892), 3 Ind. App.
258, 29 N. E. 569; *Norris, Trustee,* v. *Tice* (1895), 13
Ind. App. 17, 39 N. E. 1046; *Binford* v. *Thomas* (1897),
18 Ind. App. 330, 47 N. E. 1075; *Hill* v. *Kerstetter* (1909),
43 Ind. App. 1, 86 N. E. 858; *Excel Furniture Co.* v.
*Brock* (1917), 63 Ind. App. 494, 114 N. E. 701; *Michigan,
etc., R. Co.* v. *S. J. Peabody Lumber Co.* (1921), 76 Ind.
App. 222, 131 N. E. 841; *Allen Realty Co.* v. *Uhler*
(1925), 83 Ind. App. 103, 146 N. E. 766.    For, to ad-
judge the averments of an answer which, in law, con-
stitutes no defense whatever as sufficient to meet the
allegations of a complaint, amounts to a ruling that "if
the defense pleaded is proved, the defendant is entitled
to a verdict."    *Walling* v. *Burgess* (1889), 122 Ind. 299,
308, 22 N. E. 419, 23 N. E. 1076, 7 L. R. A. 481.

To the foregoing general rule there are exceptions,
fundamentally correct, when they can be said to rest up-
on the general principle that on appeal the judg-
ment will not be disturbed where it clearly and
3.    affirmatively appears from the record "that the
merits of the cause have been fairly tried and determined
in the court below."    The courts have always recog-
nized this principle, which has been incorporated into
our Civil Code, and made to apply to objections taken by

demurrer and overruled.    §§368, 725 Burns 1926.

We are at present considering the overruling of a demurrer to an insufficient answer, primarily harmful, and will be so declared where the record fails to affir-

4.    matively show that the ruling on the demurrer was harmful. *Ervin* v. *State, ex rel.* (1897), 150 Ind. 332, 48 N. E. 249; *Shirk* v. *Neible* (1901), 156 Ind. 66, 59 N. E. 281, 83 Am. St. 150.    Evidently, from the cases cited by appellees—*Duncan* v. *Lankford, Treasurer* (1896), 145 Ind. 145, 148, 44 N. E. 12; *State* v. *Hindman* (1903), 159 Ind. 586, 592, 65 N. E. 911; *Vulcan Iron, etc., Co.* v. *Electro, etc., Min. Co.* (1912), 54 Ind. App. 28, 33, 99 N. E. 429, 100 N. E. 307—they are seeking to avoid an erroneous ruling upon the theory of harmless error.    The record in each of the cases relied on by appellees clearly shows that the decision and judgment was based on evidence which was introduced and was admissible, in the first case, under a good paragraph of answer; in the second, in support of a cross-complaint; and in the third, an exhibit was introduced in evidence, without objection, which was essential to make the complaint good, but not exhibited therewith, and in each of these cases, it affirmatively appeared from the whole record that the judgment rested upon the evidence introduced in support of the good paragraph of answer, cross-complaint, or complaint deemed amended, and the overruling of a demurrer to other paragraphs of answer and to the complaint, under the circumstances mentioned, was held to be harmless error.    Likewise, it has been held that the overruling of a demurrer to an argumentative denial, where the general denial is pleaded, is harmless error.    *Sohn* v. *Jervis* (1885), 101 Ind. 578; *Matchett* v. *Cincinnati, etc., R. Co.* (1892), 132 Ind. 334, 31 N. E. 792; *Todd* v. *Badger* (1893), 134 Ind. 204, 33 N. E. 963; *Raynes* v. *Kokomo Ladder, etc., Co.* (1899), 153 Ind. 315, 54 N. E. 1061; *State, ex rel.,* v. *Daly* (1911),

175 Ind. 108, 93 N. E. 539; *Geisendorff* v. *Cobbs* (1911), 47 Ind. App. 573, 94 N. E. 236; *Ogden* v. *Kelsey* (1892), 4 Ind. App. 299, 30 N. E. 922. Nor is it harmful error to overrule a demurrer to an answer denying a corresponding allegation of the complaint where the same fact is provable under the general denial, which is pleaded. *Bonebrake* v. *Board, etc.* (1895), 141 Ind. 62, 40 N. E. 141. Moreover, where the facts are found specially, entitling the defendant "to judgment in accordance with the conclusions of law; and these facts could be proved under the general denial quite as well as under the special paragraph of answer" (*Watson* v. *Tindall* [1898], 150 Ind. 488, 50 N. E. 468), the special findings control the judgment and the overruling of a demurrer to a bad answer would be harmless. See, also, *Baker* v. *Pyatt* (1886), 108 Ind. 61, 9 N. E. 112. So, where plaintiff has failed to produce evidence sufficient to prove his alleged cause of action, he is not harmed by the overruling of a demurrer to an insufficient answer. *Bruce* v. *Osgood* (1900), 154 Ind. 375, 56 N. E. 25. And, it' has been held, that where the record affirmatively shows that no evidence was offered or admitted tending to prove any of the averments of an answer, the overruling of a demurrer thereto was harmless. *Leonard* v. *City of Terre Haute* (1911), 48 Ind. App. 104, 93 N. E. 872. The unqualified expressions appearing in *Goode* v. *Elwood Lodge, etc.* (1903), 160 Ind. 251, 253, 66 N. E. 742; *Garn* v. *Houser* (1920), 75 Ind. App. 364, 367, 128 N. E. 772; *Burton* v. *Burton* (1922), 77 Ind. App. 436, 438, 133 N. E. 612, or in any other reported cases of this or the Appellate Court, to the effect that the overruling of a demurrer to a bad answer will not constitute reversible error, if the matters thus pleaded are provable under the general denial, are disapproved.

From the rulings to which we have called attention, the effect of overruling the demurrer to the several para-

graphs of answer must be determined from the record.

There was evidence before the jury to the effect that on April 7, 1923, appellant purchased from Warren T. McCray the two notes indorsed by him, made part of the complaint, and introduced in evidence, paying therefor the full amount of the principal and interest to the date of purchase. These notes contained the clause, "The drawers and indorsers severally waive presentment for payment, protest, and notice of protest and nonpayment." On June 7, 1923, the $2,000 note was sent by appellant to appellee bank for collection. The letter of instructions accompanying the same said: "No protest. Use this letter as your advice. If unpaid please give full reason. The favor of prompt returns is respectfully requested." On May 9, 1923, the $10,350 note was sent to appellee bank, with a letter of instructions, same wording as accompanied the first note with the addition—"Protest if not paid at maturity."

The notes were received by appellee bank, but their receipt was not acknowledged or any other communication made by appellee bank to appellant until August 28, 1923, when, by letter, it said: "We were certainly assured that Mr. McCray had taken care of this paper. We will investigate the matter and if assured that this was not done, the matter will be immediately referred to the Board of Directors for immediate action." This letter was in response to a letter from appellant dated August 23, 1923, referring to the fact that it had sent the notes for collection with instructions to protest if not paid, and that it looked to appellee bank for their payment.

On June 14, 1923, appellant sent to appellee bank the following telegram: "Protest and return McCray note on Williams, due May 20, as instructed." On August 29, 1923, appellant, by letter, referring to the letters of the 23rd and 28th, advised appellee bank that no ar-

rangements had been made for the collection of the notes, and that it looked to appellee bank for their payment. Also saying that McCray had called on the president of appellant and asked him to recall the above collections, and that appellee bank be released from any further obligations regarding the same, which was not agreed to. On September 7, 1923, appellant again wrote appellee bank for advice as to what had been done in the matter, and again on the 13th inst., saying that its last two letters had not been answered and requested that the president of appellee bank come to Indianapolis to take the matter up with its president. On September 19, the president of appellee bank, at Indianapolis, tendered the notes to appellant, which tender was refused, but finally they were left with appellant pursuant to a stipulation that neither bank waived any of its rights by appellant's retention of the notes.

There was also evidence that appellant's first knowledge that the notes had not been paid was August 28, 1923, and that during all the time from the due date of the notes until August 28, McCray was meeting his obligations as they fell due, and that all of his checks were clearing, except a check for $15,000, which went to protest August 8, but the reason therefor was not known to the witness, nor was the reason given. This witness also testified that when notes are sent to a bank for collection and the latter declines to undertake their collection, or if accepted for collection and not paid at maturity, the custom among banks is to return the notes to the sender immediately. However, he said, it is not unusual for a bank to make a collection and hold the money for a number of days, and that is what appellant thought had been done by the Kentland bank. But there is no hard and fast rule in country banks on that subject, although witness did not know of a case where appellant permitted a correspondent bank to hold as much as $13,000 for two

months without making inquiry about it, but making inquiry, he said, would depend upon the collection department calling the cashier's attention to it.

There is also evidence to the effect that it was the custom of banks making collections to remit immediately on clearing the item. It would be unusual and not customary for a forwarding bank to remit an item for collection, with instructions to present and, if not paid, to protest, and report immediately, and not to make inquiry regarding such item for a period of sixty-nine days on not hearing from the receiving bank shortly after the maturity of the item.

On September 28, 1923, the indebtedness of McCray, directly and indirectly, to appellant, including the two notes here in question, was $53,010.87. At the time of the trial, it appears that McCray had been declared a bankrupt and that appellant had not received anything on the Messman or Williams notes. A few notes indorsed by McCray were paid in the months of May and June, 1923, to others than appellant, but there is no showing that McCray paid them. After the notes in suit became due, McCray borrowed money and paid pressing obligations amounting to something like $50,000 or $60,000. On August 31, 1923, he called his creditors together and asked them for an extension of two years.

Williams was a resident of South Dakota and never resided in Newton county, Indiana, although at times he was in that county during the year 1923. His note was a renewal of a note given by him for cattle purchased from McCray in 1919, and secured by a chattel mortgage on the cattle. At the time his renewal note came due, he was in debt something like $50,000, but, according to McCray, he might have paid a part of that note when due. In the fall of 1923, McCray had the title to a 3,700-acre ranch in South Dakota, and, at that time and continuously since the early part of 1922, was a partner

of Williams in the cattle business. The Black Hills bank had a lien on the land to secure an indebtedness of McCray, the exact amount not shown, but it appears that the entire indebtedness was $30,000. The bank foreclosed its lien and also levied upon and sold the cattle, realizing on the cattle approximately $12,000.

A. Messman and Company, the purported maker of the $2,000 note, was a partnership composed of A. Messman and McCray, engaged in farming and breeding Hereford cattle near Joliet, Illinois. McCray executed the note to himself, signing the firm name. This note represented no debt of the firm, but was regarded by McCray as accommodation paper which he sold to appellant. On March 18, 1923, this firm had about seventy-five head of pure bred Hereford cattle, and was feeding about fifty head of steers, and owned a threshing machine, gasoline engines, steam cutters, etc. In the summer of 1923, a bank in New Castle, holding a note of A. Messman and Company, levied on all of this property, but what was done with it is not shown.

McCray testified that he could not have paid either of the notes at any time after he negotiated them; that on receipt of the notes by the bank, its cashier notified him they were there with instructions to protest, and he then saw appellant's president and told him the relationship existing between him and the makers of the notes, and their inability to pay them; that a protest was fruitless as he alone would become eventually the payer, and thought his indorsement made them good; that he had $45,000 in Louisville Herald bonds which he was trying to sell, and as soon as he sold them, he would take up at least one-half of his indebtedness to the bank. Thereupon, it was agreed that the notes would not be protested, the instructions withdrawn, and the notes would stand as they were until the witness could see what he could do.

With this understanding, and thinking he had authority from appellant's president so to do, he reported to the cashier of appellee bank not to protest the notes. The witness made several trips to Chicago for the purpose of disposing of the bonds, but they were not sold until after he was declared a bankrupt. At the time of this purported agreement, although McCray claimed his legal residence at Kentland, he actually resided at Indianapolis. He was president of appellee bank, but it can hardly be said that he was representing the bank in making the agreement.

All of the testimony of McCray pertaining to the execution of the notes, the ability of the makers to pay, waiving protest, etc., was expressly denied by appellant's president. There was also evidence that McCray's checks were paid by appellee bank up until some time in August, 1923. What was known as the "Goodrich Pool" was concluded on August 23, 1923, at which time McCray was indebted to appellee bank in the sum of $155,000, a portion of which, not shown, was an overdraft. On this same day, appellant's cashier wrote appellee bank saying that he would look to it for payment of the notes. On September 7, 1923, a trust agreement was entered into between McCray and more than 75% of his unsecured creditors, of which appellant was one. The property proposed to be turned over under this agreement was of little or no value, and the committee, under the agreement, did not take charge of it, and no further steps were taken thereunder.

Since the case was properly submitted to the jury on the evidence, the instructions become material in determining the influence, if any, the answers exerted upon the verdict. It will be noticed that, at the trial, the protest feature was largely the predominating contention, and failure to present, notice of nonpayment and failure to return the notes, although

elements in the case, were infrequently mentioned.  The protest feature was further emphasized by six instructions out of eleven tendered by appellees and given by the court.  One of these instructions, No. 3, after referring to the third paragraph of answer, in effect, told the jury that if the plaintiff, by agreement with McCray, expressly waived protest of the notes in order that the latter might avail himself of his credit unimpaired by a protest, as averred in that answer, plaintiff could not recover.  This instruction, given in connection with others limited to the same subject-matter, would more than likely impress the jury with the thought and induce the conclusion that each of the several paragraphs of answer, in law, averred facts sufficient to bar appellant's action.  The jury, in its consideration of the case submitted to it, was permitted, and properly so, to have the pleadings consisting of the complaint, answer and reply, and although correctly admonished that they could not be considered for any purpose other than to advise it of the issues and questions which it was to try, nevertheless the insufficient paragraphs of answer would naturally be a guide in determining whether, under the law announced by the court, a sufficient defense had been established.

Here we may suggest that there is a clear and important difference between holding a good paragraph bad and a bad paragraph good.  *Sims* v. *City of Frankfort* (1881), 79 Ind. 446.  As said in *Scott* v. *Stetler, supra,* p. 386:  "It may not prejudice a defendant to sustain a demurrer to one paragraph of an answer, where there are others of similar character; but it does prejudice a plaintiff to hold an answer to be a bar to his cause of action which does not contain facts constituting a defense."  See, also, *Over* v. *Shannon* (1881), 75 Ind. 352, overruling prior cases sanctioning a different doctrine.  We therefore conclude that the rec-

ord at bar fails to affirmatively show that appellant was not harmed by overruling its demurrer to the several paragraphs of answer, nor are we advised of any exception to the general rule of prejudicial error that will protect the judgment.

The contention of counsel as to other questions, and from an inspection of the record at bar, it may be advisable, in case of a retrial, that we express our views on the law generally applicable to this case.

When the notes were received by appellee bank is not shown. However, in the absence of anything to the contrary, we may assume that a letter properly 7, 8. stamped and mailed at Indianapolis to a bank at Kentland, Indiana, will be received by the latter in the usual course of mail not later than the second day thereafter. *Keogh* v. *Peck* (1925), 316 Ill. 318, 147 N. E. 266, 38 A. L. R. 1151. Hence from this assumption and the evidence adduced at the trial, it reasonably appears that appellee bank received both notes before their due dates, May 20 and June 16, 1923. The notes were not returned to the sending bank until the following September 19. Under such circumstances, standing alone, the receiving bank must be regarded as having received and accepted the notes for collection subject to the law merchant and customs of banking. But, in the instant case, the notes were accompanied by special instructions, thereby, as a matter of law, making it the duty of the receiving bank to either promptly return the notes or to follow the instructions. The record discloses evidence tending to show that appellee bank neither promptly returned them or followed instructions, which was unquestionably its duty to do under its implied contract from the fact of accepting the notes for collection. *Bank of Mobile* v. *Huggins, Admr.* (1841), 3 Ala. 206; *Citizens' Nat. Bank, etc.,* v. *Third Nat. Bank, etc.* (1898), 19 Ind. App. 69, 49 N. E. 171; *Manhattan Life Ins. Co.*

v. *First Nat. Bank* (1905), 20 Colo. App. 529, 80 Pac. 467; *Lord* v. *Hingham Nat. Bank* (1904), 186 Mass. 161, 71 N. E. 312; *Sprague* v. *Bank* (1901), 63 Kans. 12, 64 Pac. 967; *Commercial & Railroad Bank* v. *Hamer* (1843), 7 Howard (Miss.) 448, 40 Am. Dec. 80.

The notes here in question were payable at appellee bank, and with it they were deposited for collection. It was the agent of the sending bank and charged with the duty of taking the necessary steps to secure prompt payment of them at maturity. One of these steps, at least, was to present the same for payment on the due date. In the instant case, the place of payment being at appellee bank, the fact that it held the notes for collection and stood ready to receive payment of them was sufficient to meet the law requiring presentment. Moreover, the drawers and indorser of the notes expressly waived presentment for payment, protest, and notice of protest and nonpayment. Therefore, in the absence of express instructions to the contrary, a bank holding such paper for collection would not be negligent in failing to protest the same. The instruction with the A. Messman and Company note for $2,000 was not to protest, but otherwise as to the Williams note. On June 14, instructions to protest the Williams note were renewed, and, in addition, its return requested, although that note was due May 20. The June 14 request, under the circumstances here shown, added nothing to appellee bank's duty to protest over that incurred by the instructions which accompanied the note, but the special request to return it and the collecting bank's failure to comply therewith until September 19, was *per se* negligence.

Without further amplification of the various phases of this case, it unquestionably appears that the duties of appellee bank at the time it accepted the notes for collection were those imposed by the

law merchant, supplemented by special instructions as to the Williams note.    Its neglect to diligently perform any of these duties necessary to fix the liability of anterior parties, including prompt notice of nonpayment to the sending bank, constituted negligence.    Under the circumstances at present before us, appellee bank was not negligent in presenting the notes for payment, nor in failing to protest the Messman note.

Returning to the allegations of the complaint, and to the negligent acts of appellee bank relied on by appellant as a cause of its damage, there remains the negligent failure to give notice of nonpayment, the negligent failure to return the notes within a reasonable time after nonpayment, and failure to follow instructions to protest the Williams note, all of which alleged negligent acts embodied notice to appellant.    The principal purpose of giving notice of nonpayment is, that those in interest may have an opportunity of taking such steps as may seem advisable to avoid loss.

Keep in mind that we are not expressing any opinion on the preponderance or weight of the evidence in this case.    Whether or not the evidence supports the claim of appellees showing a waiver by appellant of its instructions to protest, or that appellant was at all times cognizant of the fact that neither of the notes was paid at maturity and were willing to let them stand as they were, and to give the indorser McCray time and opportunity to obtain funds from which to pay a large part of the notes, or knowledge or want of knowledge that the notes were or were not paid at maturity, or that the purported makers were insolvent, or any other question of fact about which there is some dispute in the evidence, are matters not within the province of this court to decide.

Something has been said by counsel on the subject of the measure of damages in a case of this character

where there is a recovery, and of the evidence to warrant affirmative relief. The actual damage sustained as the proximate cause of the alleged omissions of appellee bank must be the measure of damages. *Second Nat. Bank* v. *Bank of Alma* (1911), 99 Ark. 386, 392, 138 S. W. 472. But the burden of proof was on appellant to show that had appellee bank been diligent, the notes, in all probability, could have been collected. The evidence justified the court in submitting that question to the jury. In the case of *Dern* v. *Kellog* (1898), 54 Nebr. 560, 565, 74 N. W. 844, 846, it is said: "In such cases it is usually impossible to show with certainty that if due care had been observed the collection would have been made. The law is not so rigid in its requirements for the protection of the negligent agent. It is only necessary to show a reasonable probability that with due care the collection would have resulted. The burden then rests on the defendant to show that there was no damage."

Judgment reversed, with instructions to grant appellant's motion for a new trial.