## MACK et al. v. AMERICAN SECURITY & TRUST CO. et al.

No. 10784.

United States Court of Appeals District of Columbia Circuit.

Argued April 20, 1951.

Decided July 26, 1951.

776

Mr. Joseph C. Slaughter, of the Bar of the Court of Appeals of New York, New York City, pro hac vice, by special leave of Court, with whom Mr. David Reich, Washington, D. C., was on the brief, for appellants. Mr. Arthur M. Becker, Washington, D. C., also entered an appearance for appellants.

Mr. G. Bowdoin Craighill, Washington, D. C., with whom Messrs. John S. Flannery and Arthur Murray Preston, Washington, D. C., were on the brief, for appellee American Security & Trust Co.

No appearance for appellees Charles E. Dawson and Earle M. Dawson.

Before BAZELON, FAHY and WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

The appellants are members of a New York partnership trading under the name of John Mack Associates (hereinafter referred to as Mack). They brought this action in the District Court against the American Security & Trust Company (Trust Company) of Washington, D. C., and the members of a Washington firm trading under the name of Dawson Export Company (Dawson). The complaint alleged that the defendants had joined in a conspiracy with one Mario Da Cunha Bueno,[1] an agent for the State of Sao Paulo, Brazil, to eliminate the appellants from a transaction involving the sale of flour to the Brazilian state, and that pursuant to this conspiracy the Trust Company had breached the obligations which it owed to the appellants as their agent. The case was tried below before a judge without a jury. After making findings of fact and conclusions of law as required by Rule 52, Fed.Rules Civ.Proc., 28 U.S. C.A., the trial court gave judgment to the defendants and the plaintiffs have appealed.

In their Statement of Points the appellants do not challenge the trial court's conclusion that the defendants did not engage in a conspiracy. In that part of

---

[1] Mario Da Cunha Bueno was also named as a party defendant in the appellants' complaint, but service of process was never obtained upon him in this jurisdiction.

their brief, as well as in their Statement of Questions Presented, they limit their argument to the contention that the Trust Company violated the duty of loyalty owed by an agent to his principal. They take issue with the findings and conclusion of the trial court only insofar as they negative the existence of an agency relationship between the appellants on the one hand, and the Trust Company on the other. Accordingly, we do not review the judgment in favor of those defendants composing Dawson.[2]

The substance of the controversy between appellants and the Trust Company concerns a letter of credit which was opened by the Secretary of Agriculture of the State of Sao Paulo, Brazil, confirmed by the National City Bank of New York, and which named the Trust Company as beneficiary. This letter was subsequently assigned by the Trust Company to the Kansas Milling Company which obtained the proceeds upon presentment of the required documents to the National City Bank and distributed such proceeds according to a plan pre-arranged with Dawson. This plan did not provide for any payment to appellants. Appellants assail the assignment by the Trust Company as wrongful.

█ The basis of this attack is the claim of appellants that the letter of credit was originally issued in payment for a large quantity of flour which they had contracted to sell to the Brazilian state, that it was upon their direction that the Brazilian buyer named the Trust Company as beneficiary, and that the Trust Company was cognizant of these facts. They argue that the Trust Company, if it chose to exercise dominion over the letter, was obliged to do so as their agent, subject to their control, whereas the assignment actually was made without their knowledge

or consent. They rely upon the proposition that the relationship of principal and agent need not be predicated upon an express agreement.[3] Appointment by the principal and acceptance by the agent may be implied from their conduct. See Zeligson v. Hartman-Blair, Inc., 10 Cir., 1943, 135 F.2d 874; Farmers' National Bank v. Missouri Livestock Commission Co., 8 Cir., 1931, 53 F.2d 991; Huckabee v. Pullman Co., D.C.S.D.Ga.1925, 8 F.2d 43; Restatement, Agency §§ 15, 26. In short, the appellants argue that by directing their buyer to name the Trust Company as beneficiary and by communicating this information to the Trust Company, they impliedly authorized it to act as their agent; and that the Trust Company, by accepting and exercising dominion over the letter, impliedly consented to the appointment. Cf. Continental National Bank v. Discount & Deposit State Bank, 1927, 199 Ind. 290, 157 N.E. 433, 439–440; 1 Williston on Contracts § 91D (Rev.Ed.).

█ We need not pass upon the merit of this contention within the limited factual context which the appellants pose, for the findings of the trial court disclose additional circumstances surrounding the transaction which we think are controlling in this case. These concern a secondary arrangement between the appellants and the Dawson firm. They clearly support the finding of the trial court that the Trust Company had not consented, either expressly or by implication, to act as the appellants' agent. As between themselves, the relationship of principal and agent could not arise in the absence of such consent, though, as we have seen, such consent may be implied. Central Trust Co. of New York v. Bridges, 6 Cir., 1893, 57 F. 753, 764, opinion by Taft, J.; Restatement, Agency, §§ 1, 15; 2 Am.Jur. § 21; 2 C.J.S., Agency, § 18. These ad-

---

**2.** Rules 17(c) and 17(i), General Rules of the United States Court of Appeals for the District of Columbia.

**3.** The appellants also claimed that the Trust Company had expressly agreed with them to hold the proceeds of the letter of credit as their agent for their benefit. This was vigorously denied by

the Trust Company's testimony. This direct factual conflict was resolved by the trial court in favor of the Trust Company, and, under the applicable standards governing our review, we do not disturb the finding made. Rule 52, Fed. R.Civ.P.; Santucci v. Pignatello, 1951, —— U.S.App.D.C. ——, 188 F.2d 643.

ditional circumstances may be detailed briefly.

Shortly after contracting to sell the State of Sao Paulo a large quantity of flour, appellants concluded negotiations with Dawson to · obtain the flour with which to meet this Brazilian commitment. The name of the Trust Company, as Dawson's bank, first came to the appellants' attention during these negotiations. By the terms of the supply agreement made at that time, the appellants were to assign to the Trust Company "in favor of the Dawson Export Company" an irrevocable confirmed letter of credit, transferable and divisible. It is, at the least, a reasonable conclusion to draw from these terms that the appellants themselves considered the Trust Company, at the outset, as representing Dawson's interests in their dealings with that firm. As stated by appellants' chief witness, "The only reason American Security & Trust Company came into this picture at the outset was because Dawson assured us that through American Security & Trust Company, he could borrow a sufficient amount of money to pay for this flour; and in order to insure American Security & Trust Company of the fact that this was a substantial business, he asked us to open up a letter of credit to the American Security & Trust; *name them as his bank*." (Emphasis added.) In summary, the appellants were buying flour from Dawson for resale to Brazil. It was expected that Brazil would make payment to appellants by opening a letter of credit in their favor; the appellants in turn would assign this letter to the Trust Company "in favor of the Dawson Export Company" as payment to Dawson.

We do not think that this arrangement and relationship was necessarily altered by subsequent developments. The first of these was the refusal· of the Brazilian government to open a letter of credit naming appellants as beneficiaries. This, of course, rendered an assignment by the appellants to the Trust Company impossible. In the face of this complication, Dawson suggested that the letter be issued directly to the Trust Company. The appellants accepted this proposal and relayed it to Brazil. Concurrently the Trust Company, at Dawson's request, sent the following cablegram:

"Dawson Export Company has produced certain documents which indicate to us that they can meet reasonable commitments in flour. It is recommended that a divisible letter of credit be opened in our favor with instructions to disburse money against railroad bills of lading."

A reasonable inference, if not the only one, from these developments is that all the parties concerned contemplated that the essential features of the original arrangement between Dawson and the appellants would continue, that the Trust Company would still hold the letter "in favor of the Dawson Export Company" although receiving it from Brazil·directly rather than by assignment from appellants. Such an inference gains support from the conduct of the parties after the letter was opened. As originally written, the letter was neither assignable in whole nor divisible. The Trust Company, upon learning the terms, concluded that they imposed unacceptable burdens and decided that it wanted no further part in the transaction. Independently of the appellants, it notified Brazil, through the National City Bank, that the letter should be modified to read in favor of "Dawson and/or assignee." The appellants' exhibits show that they also joined in requesting Brazil to make such an amendment. It is apparent from this that both the Trust Company and the appellants considered the letter, which was then in the name of the Trust Company, as being held for Dawson's benefit.

Finally, the evidence shows that it was pursuant to the joint requests of Bueno and Dawson that the Trust Company assigned the letter to the Kansas Milling Company after Brazil had eventually authorized an assignment. The Trust Company's fees, as well as the transfer commission charged to it as the named beneficiary by the National City Bank, were paid by the Kansas Milling Company "at the request of the Dawson Export Company" and "for their [Dawson's] account."

In the light of these circumstances, the finding of the trial court that the Trust Company did not agree at any time to act as the agent of appellants, cannot be characterized as clearly erroneous. The testimony of the Trust Company's witnesses, accepted by the lower court, was unequivocal and emphatic in denying an express agreement to hold the letter for the benefit of Mack. This left the question of an implied agreement. We do not think that the evidence was of a nature to require the court to find an implied consent. The intention and agreement of the parties, as derived from their conduct, their relationship to each other, and from the other circumstances of the case, was a question of fact to be determined, in this case, by the trial judge without a jury. The burden of proving an agency relation was upon the appellants. Swift v. White Oak Coal Co., 1915, 44 App.D.C. 159. This burden they did not meet in a manner which calls upon this court to set aside the findings of the trial judge to the contrary.

Affirmed.